**E. Kingsley MULL, Plaintiff,**

**v.**

**ARCO DURETHENE PLASTICS, INC., Successor to ARCO Polymers, Inc., and Atlantic Richfield Company, Defendants-Appellees.**

**Appeal of Eugene CRANE, Bankruptcy Trustee in the Matter of E. Kingsley Mull.**

**No. 85–1023.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 24, 1985.

Decided Feb. 24, 1986.

Philip C. Stahl, Reuben & Proctor, Chicago, for plaintiff.

Ronald Wilder, Schiff, Hardin & Waite, Chicago, Ill., for defendants-appellees.

Before WOOD and FLAUM, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

Eugene Crane, Bankruptcy Trustee in the Matter of E. Kingsley Mull ("bankruptcy trustee" or "trustee"), appeals the district court's order granting summary judgment in favor of defendants-appellees, ARCO Durethene Plastics, Inc. (successor to ARCO Polymers, Inc.) and Atlantic Richfield Co. (collectively the "defendants"). The district court, 599 F.Supp. 158 ruled that the present action, initiated by plaintiff E. Kingsley Mull under the Age Discrimination in Employment Act of 1967, as amended ("ADEA"), 29 U.S.C. § 621 *et seq.*, was time-barred. We affirm the decision of the district court.

**I.**

For purposes of our review of the district court's order granting summary judgment, we will construe the facts alleged in the light most favorable to the plaintiff, E. Kingsley Mull.[1] Mull had been employed by defendants and their corporate predecessors in various executive positions from 1960 until his termination in 1979. For approximately eleven years prior to his termination, Mull had served as Business Manager at defendant ARCO Polymers's Chicago facility. By late 1978, Mull's performance as Business Manager had come under criticism. Robert Kauffman, then General Manager of Converted Products for ARCO Polymers, monitored Mull's work and eventually concluded that Mull would never perform satisfactorily in his present capacity.

Kauffman met with Mull on April 18, 1979, and informed him that because of his alleged inadequate performance he would be removed as Business Manager on May 14, 1979. At this meeting, Kauffman presented Mull two options: (1) a new permanent position as a Coordinator in Philadelphia; or (2) immediate termination with the option of electing early retirement. On April 24, 1979, defendants sent Mull a letter outlining retirement figures based upon a June 1, 1979 retirement date.

On April 27, 1979, Mull wrote Kauffman requesting that his present job status be reconsidered. On May 2, 1979, Kauffman and William Allshouse, Jr., Manager of Headquarters Employee Relations, met with Mull to discuss his situation. Kauffman told Mull that his removal as Chicago Business Manager was not open for reconsideration. Mull then asked if he could accept the position as Coordinator without moving to Philadelphia. Kauffman responded that this would be impossible, but did offer Mull the option of being placed on temporary special assignment until his termination date, which had been set as December 31, 1979. Mull asked for additional

---

1. Consistent with the district court's protective orders sealing certain portions of the record, our factual summary recites only those matters necessary to an adjudication of this appeal.

time to make a decision regarding the Philadelphia position. Kauffman granted Mull's request and stated that in the interim Mull would be placed on special assignment in Chicago after his removal as Business Manager.

As the district court noted, Mull, at his first deposition, did not recall any discussion regarding how long the special assignment was to last. Over a year later, however, at Mull's second deposition, he admitted that the special assignment was to terminate either upon his acceptance of the position in Philadelphia or, at the latest, on December 31, 1979. Mull acknowledged that the only permanent position defendants were offering was the Philadelphia job.

On May 11, 1979, Kauffman released an internal memorandum announcing that Mull would be replaced as Business Manager and would henceforth be placed on special assignment. The memorandum also noted that Carl Gomes would "temporarily" be assigned to serve as Acting Business Manager at the Chicago facility. At his second deposition, Mull testified that he believed that Kauffman's May 11 memorandum distinguished between the "temporary" assignment Gomes received and the "special" assignment he was given. Mull stated that he was aware of no other employee who had been placed on special assignment just prior to termination. In fact, he noted that he believed the special assignment was used on occasion as an interim position for persons in the process of moving from one permanent job to another. Mull did admit, however, that he never discussed the duration of his special assignment with either Kauffman or Allshouse and that, given the May 2 meeting, his understanding that he still might be in line for a permanent position, other than the one offered in Philadelphia, was "optimistic."

On June 28, 1979, Mull formally rejected the Philadelphia job and therefore continued to serve on special assignment. During this period, Mull's work involved several long-range projects. Mull acknowledged that he unilaterally assumed he would see these projects through to their completion; he never discussed his expectations with either Kauffman or Allshouse. In fact, Mull's own handwritten notes from a meeting on November 9, 1979, with Allshouse indicate that he knew defendants expected him to retire at the end of the year.

On November 27, 1979, Allshouse requested that Mull come to his office to discuss retirement "sign-up." At their meeting, Mull stated that he was not prepared to retire and would not sign any document without the advice of counsel. Pursuant to company policy, Allshouse sent Mull a letter on December 6, 1979, indicating that he would be terminated as of December 31. This letter was the first written termination notice that Mull received.

On January 16, 1980, Mull instituted an action under the ADEA by filing a notice of intent to sue with the Equal Employment Opportunity Commission ("EEOC"). Mull alleged that defendants had illegally demoted him and eventually forced him to retire because of his age. On June 16, 1980, after being informed by the EEOC that it would take no further action, Mull filed this lawsuit. Defendants initially moved for partial summary judgment seeking dismissal of Mull's unlawful demotion claim on grounds that it was time-barred. After further discovery, defendants eventually moved for full summary judgment seeking to dismiss as untimely both Mull's unlawful demotion and unlawful termination claims.

On November 28, 1984, the district court granted defendants' motion for full summary judgment. The court noted that for purposes of this case, pursuant to 29 U.S.C. § 626(d)(1), an age discrimination suit should not have been filed in the district court unless Mull had "filed a charge with the EEOC within 180 days from the date the alleged discriminatory act occurred." Mem.Opin. at 5. The court concluded that Mull had received notice of his termination on May 2, and that there was no basis for equitable modification of the 180-day filing

period. Accordingly, the court found that Mull's January EEOC filing was untimely.[2]

Since the time Mull initiated this action, he has filed for personal bankruptcy. The bankruptcy trustee therefore brings this appeal contending that the district court erred in dismissing Mull's action. The trustee argues that there are genuine issues of material fact yet to be determined including whether Mull was actually notified of his termination on May 2 and, even assuming notification on that date, whether the 180-day limitations period was subject to equitable modification.

## II.

Fed.R.Civ.P. 56(c) provides that the district court grant summary judgment if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In determining whether summary judgment is appropriate, "[a]ll factual inferences are to be taken against the moving party and in favor of the opposing party." *International Administrators, Inc. v. Life Insurance Co. of North America*, 753 F.2d 1373, 1378 (7th Cir.1985). In those cases in which a review of the record indicates that "inferences contrary to those drawn by the trial court might be permissible," we are required to reverse the grant of summary judgment. *Munson v. Friske*, 754 F.2d 683, 690 (7th Cir.1985) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)). Summary judgment is appropriate, therefore, only when reasonable minds could not differ on the inferences arising from the undisputed facts.

The trustee's first contention is that the district court erred in concluding that no genuine issue of material fact existed with respect to the date upon which Mull received notice of termination. For purposes of this case,[3] an age discrimination suit under the ADEA[4] may be brought only if the plaintiff filed a charge with the EEOC within 180 days of the occurrence of the discriminatory act. 29 U.S.C. § 626(d)(1).[5] The district court found that the only reasonable inference that could be drawn from the facts presented here was that Mull was notified of his termination on May 2, 1979, and that his January 1980 filing with the EEOC was therefore untimely. We agree.

The definition of what constitutes notice of termination under the ADEA is controlled by two relatively recent Supreme Court decisions, *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) and *Chardon v. Fernandez*, 454 U.S. 6, 102 S.Ct. 28, 70

---

**2.** Apart from his claim of unlawful termination, Mull also alleged that he had been unlawfully demoted. The district court, noting that Mull had been notified of his demotion on April 18, 1979, held that his action for unlawful demotion was time-barred because Mull failed to file with the EEOC within the 180-day limit. On appeal, the trustee contends that the district court erred only in granting summary judgment with respect to Mull's claim of unlawful termination. Accordingly, we consider only that issue.

**3.** The parties do not challenge the district court's ruling that Illinois was not a "deferral" state governed by the 300-day filing period of 29 U.S.C. § 626(d)(2) when the alleged discrimination in this case took place. *See Willis v. Berger Transfer & Storage, Inc.*, 529 F.Supp. 279, 281 (N.D.Ill.1981).

**4.** Pursuant to 29 U.S.C. § 623(a)(1), it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to

his compensation, terms, conditions, or privileges of employment, because of such individual's age...."

**5.** In pertinent part, 29 U.S.C. § 626(d) provides:

No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such a charge shall be filed—

(1) within 180 days after the alleged unlawful practice occurred....

The purpose behind the filing requirement is two-fold: (1) it provides "the EEOC with an opportunity to achieve a conciliation of the complaint while the complaint is still fresh" and (2) it gives "early notice to the employer of a possible lawsuit, thereby promoting the preservation of evidence as well as good faith negotiating on the part of the employer during the conciliation period." *Posey v. Skyline Corp.*, 702 F.2d 102, 104 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983).

L.Ed.2d 6 (1981) (per curiam). *See, e.g., Anderson v. Illinois Tool Works, Inc.,* 753 F.2d 622, 624 n. 2 (7th Cir.1985) (applying *Ricks* analysis to cases arising under the ADEA). *Ricks* involved a college professor who, after being denied tenure, accepted a " 'terminal' contract to teach one additional year." 449 U.S. at 253, 101 S.Ct. at 501. Seven months later, the professor filed a complaint with the EEOC alleging that he had been terminated in violation of both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* and 42 U.S.C. § 1981. In applying a 180-day filing limitations period under Title VII, the Supreme Court held that the clock began to run on the date the tenure decision was made and communicated to the plaintiff, even though the effects of that decision—actual termination—did not occur until later. *Id.* at 258, 101 S.Ct. at 504. In fact, the Court specifically noted that the "[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Id.* at 257, 101 S.Ct. at 503.

In *Chardon,* the Court applied the *Ricks* analysis in holding that suits challenging politically-motivated firings brought under 42 U.S.C. § 1983 were time-barred because of a failure to file within the one-year limitations period. In *Chardon,* the plaintiffs were notified that their appointments would terminate on a specified date in the future. 454 U.S. at 7, 102 S.Ct. at 28. In ruling that the plaintiffs' actions brought over one year after receipt of the notice of termination were time-barred, the Court reiterated its holding in *Ricks* "that the proper focus is on the time of the *discriminatory act,* not the point at which the *consequences* of the act become painful." *Id.* at 8, 102 S.Ct. at 29 (emphasis in original).

■ The trustee first argues that the district court's grant of summary judgment was erroneous because *Ricks* requires written notice of termination which Mull, as defendants readily concede, did not receive until December 6, 1979. We note, however, that under *Ricks* and its progeny unequivocal notice of termination is all that is required to start the limitations period running; it is not necessary for such notice to be in writing. *See, e.g., Cervantes v. IMCO Halliburton Service,* 724 F.2d 511, 513–14 (5th Cir.1984); *Posey,* 702 F.2d at 103–05. The bankruptcy trustee's argument to the contrary is, therefore, without merit.

■ Even conceding that oral notice could, as a general matter, be sufficient, the bankruptcy trustee argues that summary judgment was nonetheless inappropriate since there are genuine issues of material fact with respect to the May 2 notice of termination. The trustee contends that Mull's deposition testimony is in conflict with defendants' statements that on May 2, 1979, Mull was unequivocally told he would be terminated. In his brief, the trustee argues that Mull understood that he had been given three options at the May 2 meeting: (1) a permanent job in Philadelphia; (2) immediate voluntary retirement; or (3) voluntary retirement with a temporary position until December 31, 1979. The trustee asserts that Mull rejected all three options and that it was not until December 1979 that Mull was confronted with forced retirement. The trustee argues, therefore, that Mull's January EEOC filing was timely.

A review of the record indicates, however, that the trustee has apparently attempted to create a factual dispute where one does not exist. In Mull's first deposition he testified that he did not recall any discussion regarding when his employment would terminate. At his second deposition, however, Mull acknowledged that he had been given three options, and apart from the permanent job in Philadelphia, the only option for continued employment was the temporary position which he conceded would terminate on December 31, 1979. The trustee argues that Mull's rejection of all three options placed his employment status in limbo, thereby forcing defendants to create a fourth option, *i.e.,* the special assignment. There is nothing in the record, however, that would indicate that the temporary position and the special as-

signment were different jobs. The only reasonable inference that can be drawn is that in rejecting both the Philadelphia job and immediate early retirement Mull necessarily accepted that the temporary position (*i.e.*, the special assignment) that concededly ended with his termination on December 31.[6] The trustee's bare assertion that an issue of fact exists with respect to the alleged distinction between the temporary position and the special assignment does not warrant reversing the district court's grant of summary judgment.[7] *See Posey*, 702 F.2d at 105 (noting that "[t]o create a question of fact, an adverse party responding to a properly made and supported summary judgment motion must set forth specific facts showing that there is a genuine issue for trial").

The trustee also points to several other factors which he argues are illustrative of genuine issues of material fact overlooked by the district court. First, the trustee asserts that the special assignment position was not a job category used for terminated employees and that therefore an issue was raised as to when Mull was actually terminated. Mull did state that he knew of employees that had been retained on special assignment for periods exceeding one year. Mull's knowledge, however, does not refute the fact that on May 2, 1979, he was informed that he would be terminated. In short, the fact that other employees may have served on special assignment without being terminated does not raise a factual issue with respect to whether Mull was given notice of his termination date.

The same is true for the trustee's contention that because Mull was placed on long-term projects while on special assignment, a factual issue is raised as to whether he received notice of his termination on May 2. The mere fact that defendants allowed Mull to work on long-term projects is not inconsistent with his concession that he was informed about his termination on May 2. Indeed, the only reasonable inference that can be drawn from the record is that defendants permitted Mull to work on long-range projects even though he was to be terminated at the end of the year; simply because projects would continue after Mull's departure does not raise an issue of fact as to his date of termination.

The trustee also argues that an issue of a fact exists because defendants did not give Mull another termination notice after he rejected the Philadelphia job. As we have stated, *Ricks* requires only unambiguous notice of termination. Once this notice is given, an employer need not repeat it to ensure that the limitations period will run. From Mull's own deposition, it is apparent that he understood that a rejection of both immediate retirement and the

---

6. At oral argument, the trustee raised for the first time this court's decision in *Harry F. Chaddick Realty, Inc. v. Maisel*, 762 F.2d 534 (7th Cir.1985), as support for the proposition that Mull's statements discussing both the May 2 meeting and his termination date were not "fatal admissions." In *Chaddick*, we noted that in reviewing a grant of summary judgment, we would be "unwilling to treat ... as fully dispositive" statements made by a party which "are not unarguably clear." *Id.* at 539–40 n. 4.

Unlike the situation in *Chaddick*, and contrary to the trustee's assertion, our review of the record indicates that Mull's admissions were not ambiguous. The district court did not err, therefore, in relying on these statements to support its order of summary judgment. *See Miller v. International Telephone & Telegraph Corp.*, 755 F.2d 20, 24 (2d Cir.), *cert. denied*, — U.S. ——, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985).

7. Contrary to the trustee's assertion, the district court's decision in *Monnig v. Kennecott Corp.*, 603 F.Supp. 1035 (D.Conn.1985), is not inconsistent with the result we reach in this case. In *Monnig*, the court held that an employer's letter to employees expressing a "belief that there would not be a continuing career opportunity" for them at the company while requesting that they "stay on for the 'next several months'" did not constitute notice of termination for purposes of the ADEA filing limitations period. *Id.* at 1036–38. The court ruled that the letter was insufficient notice because it was unclear whether it represented the "official position" of the employer and also because it failed to state a specific termination date. *Id.* at 1038.

Conversely, in the present action, the trustee does not argue that the May 2 notice failed to represent defendants' "official position." It is also clear from the record that a specific date of termination was communicated to Mull at the May 2 meeting. The trustee's reliance on *Monnig* is, therefore, inapposite.

Philadelphia job left him with one option; *i.e.*, the special assignment which would terminate on December 31, 1979. Given the facts of this case, the trustee's assertion that renotification regarding this termination date was necessary to provide Mull unequivocal notice is without merit.

■ Finally, the trustee contends that a November draft of a letter to Mull which stated that "[y]ou are to be terminated December 31" is inconsistent with the district court's finding that Mull was notified of his termination on May 2. This inconsistency is further illustrated, according to the trustee, by a comment made by Allshouse at a November meeting in response to a question posed by Mull. Allshouse stated that he would see if there was anything else that could be offered to Mull as an "inducement for retirement." Although at first glance this evidence may appear to raise a factual issue regarding the May 2 termination notice, a review of the record reveals otherwise.

The simple fact that Mull's written termination notice states that he was to be terminated on December 31 is not inconsistent with the district court's finding that Mull received notice of his termination on May 2. Indeed, the significant date for purposes of *Ricks* and the limitations period is that date upon which the employee receives notice of termination and not the date upon which the termination becomes effective. With respect to Allshouse's comment about inducing Mull to accept retirement, the record indicates that the discussions between Mull and Allshouse focused solely on whether Mull would "sign up" for early retirement so that he would be eligible for retirement benefits as of January 1, 1980. Mull's question to Allshouse appears to

have been an attempt to increase his early retirement benefits; there is nothing in the record that would indicate that the parties were discussing Mull's continued employment as opposed to these early retirement benefits. Indeed, the November draft letter that the trustee relies on reveals this. The first paragraph of that letter, which incidentally was never sent, provides:

> You are aware that you must have your application for retirement allowance on file with the Secretary of the retirement system in Los Angeles on or before Friday, November 30 to make your retirement effective January 1, 1980. You are to be terminated December 31, 1979, regardless of whether you have made the retirement choice or not.

On the record, it is clear that the only issue Allshouse and Mull discussed in November was whether Mull would elect the early retirement benefits defendants were offering. Contrary to the trustee's assertion, therefore, these discussions are not inconsistent with the district court's finding that Mull received notice of his termination on May 2.[8] Accordingly, the court did not err in granting defendants' motion for summary judgment on grounds that there was no genuine issue of material fact with respect to Mull's termination notice.[9]

### III.

In the alternative, the trustee argues, even assuming the limitations period began to run on May 2, that the district court's grant of summary judgment was erroneous because the running of the limitations period should have been tolled and because defendants should have been estopped from raising the defense of untimely filing.

8. Even if we were to accept the trustee's claim that by November Mull had not yet accepted his termination and was seeking inducements to do so, this would not alter our conclusion. Under *Ricks,* the limitations period begins to run upon notice of termination and not when the employee finally accepts the termination as inevitable.

9. The trustee argues that, contrary to the applicable standards, the district court failed to construe all factual inferences against defendants

when it concluded that "[i]f anything, ARCO's failure to issue a formal written notice should have alerted Mull to the possibility that he was being treated discriminatorily." Mem.Opin. at 17. We need not decide, however, whether the district court erred in making this inference since it is not essential to our decision. Even without relying on this inference, the record clearly establishes that Mull had received notice of his termination on May 2.

The trustee asserts that equitable modification is justified by defendants' (1) violation of their own company policy of written termination notices; (2) postponement of retirement discussions until after the 180-day limitations period had run; (3) designation of Mull's position as a "special" assignment rather than as a temporary job; (4) placement of Mull on several long-range projects; and (5) mischaracterization in the December 6 letter of Mull's termination as having occurred several months earlier.

As the trustee correctly notes, the 180-day filing limitations period prescribed by the ADEA is subject to equitable modification. *Vaught v. R.R. Donnelley & Sons Co.*, 745 F.2d 407, 410 (7th Cir.1984). Indeed, two types of equitable modification are generally recognized: "(1) equitable tolling, which often focuses on the plaintiff's excusable ignorance of the limitations period and on lack of prejudice to the defendant and (2) equitable estoppel, which usually focuses on the actions of the defendant." *Naton v. Bank of California*, 649 F.2d 691, 696 (9th Cir.1981) (citations omitted). The trustee argues that both equitable tolling and estoppel are warranted here.

■ Dealing first with equitable tolling, it is well-established that the limitations period is tolled until " 'facts that would support a charge of discrimination ... [are] apparent or should [be] apparent to a person with a reasonably prudent regard for his rights similarly situated to the plaintiff.' " *Vaught*, 745 F.2d at 410–11 (quoting *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924, 931 (5th Cir.1975)). As we have previously noted, the record indicates that Mull received notice of his termination on May 2, 1979, and that, therefore, under the reasoning of *Vaught*, the limitations period began to run on that date. Our analysis is not affected by Allshouse's testimony that it was standard policy of ARCO Polymers to send written termination notices. The trustee contends that when a company has a policy of terminating its employees in writing, the limita-

tions period is necessarily tolled until such written notice is received. We disagree.

It would be an anomalous situation if an employee, after receiving unequivocal oral notice of termination, could sit on his rights until formal written notice was received. *Ricks* does not require such formality. See *Anderson*, 753 F.2d at 624 n. 2 (noting that "[i]n cases of employment discharge, the filing period begins to run on the date the employee is *informed* of the discharge....") (emphasis added). Indeed, there are no policy grounds that would support tolling the running of the filing period beyond the point at which the employee is aware that the alleged discriminatory action has occurred. Once the employee knows of the termination, he has ample time in which to commence an action for relief. This remains true even if the form of the notice is not in accordance with the employer's standard policy.

Conversely, delaying the running of the limitations period in such a situation would undermine its purpose. As the Court in *Ricks* noted, "[t]he limitations periods, while guaranteeing the protection of the civil rights laws to those who promptly assert their rights, also protect employers from the burden of defending claims arising from employment decisions that are long past." 449 U.S. at 256–57, 101 S.Ct. at 503. We therefore hold that the limitations period under the ADEA will begin to run once an employee receives unambiguous notice of the alleged discriminatory action, even if the form of notification is not in strict compliance with company policy or practice. The trustee's argument that the prospect of equitable tolling in this case rendered the grant of summary judgment erroneous is, therefore, without merit.

Contrary to the trustee's assertion, our decision in *Kephart v. Institute of Gas Technology*, 581 F.2d 1287 (7th Cir.1978), does not mandate a different result. In *Kephart*, we noted that an employer's failure to post a required notice advising employees of their rights under the ADEA would toll the running of the limitations

period. *Id.* at 1289. Absent the requisite notice, we held that the limitations period would not begin to run until "the employee either retains an attorney or acquires actual knowledge of his rights under the ADEA." *Id.* Unlike the plaintiff in *Kephart*, however, Mull did not allege that defendants failed to post the requisite notice. *See Posey*, 702 F.2d at 105–06 (to avoid summary judgment in accordance with *Kephart*, "there must exist an issue of fact concerning whether [the employer] had conspicuously posted the required notice of ADEA rights"; employee's mere failure to read such notice does not present grounds for equitable tolling). Moreover, contrary to the facts in *Kephart*, there is no indication that Mull was unaware of his rights under the ADEA. In short, the prospect of uninformed employees sleeping on their rights that activated the *Kephart* court to toll the limitations period is lacking here.

■ In lieu of tolling, the trustee also argues that the district court erred in ruling that no issue of fact existed with respect to equitable estoppel. Equitable estoppel is available only if the employee's otherwise untimely filing was the result "either of a deliberate design by the employer or of actions that the employer should unmistakably have understood would cause the employee to delay filing his charge." *Price v. Litton Business Systems, Inc.*, 694 F.2d 963, 965 (4th Cir.1982). Among other factors, the granting of equitable estoppel should be premised upon (1) "a showing of the plaintiff's actual and reasonable reliance on the defendant's conduct or representations" and (2) "evidence of improper purpose on the part of the defendant or of the defendant's actual or constructive knowledge of the deceptive nature of its conduct." *Naton*, 649 F.2d at 696. Pursuant to this standard, courts have held that an employer's attempts to lessen the adverse impact of an employ-

ment decision will not as a matter of law serve to toll the limitations period. *E.g., Mogley v. Chicago Title Insurance Co.*, 719 F.2d 289, 290–91 (8th Cir.1983) (per curiam) (limitations period not tolled by employee being given option of remaining on payroll until retirement benefits accrue); *Kriegesmann v. Barry-Wehmiller Co.*, 739 F.2d 357, 358–59 (8th Cir.) (per curiam) (limitations period not tolled by employer's attempt to find employee other work), *cert. denied,* —— U.S. ——, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984); *Kazanzas v. Walt Disney World Co.*, 704 F.2d 1527, 1532 (11th Cir.) (same), *cert. denied*, 464 U.S. 982, 104 S.Ct. 425, 78 L.Ed.2d 360 (1983). Similarly, an "employee's hope for rehire" or for "a continuing employment relationship" in any capacity does not necessarily justify the exercise of equitable estoppel. *Price*, 694 F.2d at 965–66. *Accord Lawson v. Burlington Industries, Inc.*, 683 F.2d 862, 864 (4th Cir.), *cert. denied*, 459 U.S. 944, 103 S.Ct. 257, 74 L.Ed.2d 201 (1982). *See Caldwell v. National Association of Home Builders*, 771 F.2d 1051, 1056 n. 1 (7th Cir.1985).

In Mull's case, the district court concluded that no genuine issue of fact existed as to whether equitable estoppel should bar defendants from raising the claim of untimely filing. We agree. The trustee's claim that Mull was misled by defendants' failure to send a written termination notice on May 2 or by their delaying retirement discussions until November is contradicted by Mull's own testimony at his second deposition. Mull stated that he understood that his failure to accept either immediate retirement or the permanent position in Philadelphia would result in his termination at the end of 1979. Mull's knowledge of his situation made his reliance on defendants' alleged misleading actions an impossibility. Equitable estoppel is, therefore, unwarranted here.[10]

---

10. The trustee contends that the district court erred in concluding that defendants' postponement of retirement talks until November was not an attempt to mislead Mull into sleeping on his rights, but rather "an effort to avoid humili-

ating Mull...." Mem.Opin. at 18. Even if we assume that the inference was improperly drawn, this alone does not alter our result. Given Mull's knowledge of his May 2 termination notice, even if we reject the district

Similarly, Mull's optimistic hopes for continued employment that the trustee claims were generated by Mull's being placed on special as opposed to temporary assignment and his working on long-term projects provide an insufficient basis upon which to grant equitable estoppel. Although Mull may have had high hopes, he concededly never communicated these expectations to his employers. In addition, the trustee can point to no specific facts that would indicate that defendants represented Mull's special assignment role as other than a means to keep him employed for the balance of 1979. Indeed, Mull's own handwritten notes from a November meeting with Allshouse indicate that he too knew that he would be terminated effective December 31, 1979. Again, therefore, the necessary element of reasonable reliance by Mull is missing.

Finally, the trustee alleges that defendants' "re-writing" of Mull's December 6 termination letter to make it appear as though he had been terminated six months earlier also provides a basis for equitable estoppel. As the trustee readily concedes, however, this event occurred *after* the running of the 180-day limitations period. Even if Mull had reasonably relied on this action by defendants, such reliance could only have occurred after the limitations period had run. Accordingly, the "re-writing" of the December letter is "irrelevant to the issue of equitable estoppel." *Vaught*, 745 F.2d at 412.[11]

### IV.

For the reasons stated above, we conclude that there are no genuine issues of material fact with respect to the date upon which Mull received notice of his termination or with regard to the issue of equitable modification of the limitations period. The order of the district court granting summary judgment is, therefore,

AFFIRMED.

court's inference and assume that defendants' actions were misleading, the essential element of reasonable reliance necessary for equitable estoppel would still be missing.

11. Because of our resolution of the equitable tolling and estoppel issues, we need not reach defendants' argument that the trustee is ineligible for equitable relief because of Mull's "unclean hands." During Mull's tenure as Business Manager, he operated a "consulting" firm from which he allegedly received approximately $300,000 in payments for undocumented services provided to companies that were major suppliers to ARCO Polymers. At present, only one case involving these payments has been fully litigated. In that criminal case, which involved a payment of $8,000, the district court accepted Mull's plea of *nolo contendere.* ARCO Durethene Plastics currently has pending in the district court a one million dollar counterclaim against Mull and a number of suppliers to its Chicago facility. In addition, defendants discovered that Mull had allegedly also been involved in multi-million dollar developments and projects in the Chicago area. The district court noted that these ventures had interfered with Mull's job performance as Business Manager.