Donald R. HARRIS, Plaintiff,

v.

WGN CONTINENTAL BROADCASTING CO., Defendant.

No. 86 C 1772.

United States District Court,
N.D. Illinois, E.D.

Dec. 16, 1986.

Harvey M. Silets, David A. Ward, Donald L. Homyk, Silets and Martin, Ltd., Chicago, Ill., for plaintiff.

Richard L. Marcus, Gerald F. Lutkus, Sherelyn Rubin Kaufman, Reuben and Proctor, Chicago, Ill., for Tribune Broadcasting Co.

Seymour Schriar, Chicago, Ill., for The American Federation of Television and Radio Artists.

## MEMORANDUM OPINION

GRADY, Chief Judge.

This age discrimination case is before us on the motion of WGN Continental Broadcasting Company ("WGN") to dismiss Count I of plaintiff Donald R. Harris's Amended Complaint. For the reasons stated below, the motion is denied.

## FACTS

Harris began working for WGN in various capacities in 1963. Complaint ¶ 9.[1] In 1966, he became a full-time news reporter. ¶ 9. Apparently, his assignment until August 22, 1983, involved both WGN Television ("WGN–TV") and WGN Radio, although it is not clear from the complaint whether he had always worked for both. ¶ 11. On August 22, 1983, Harris was assigned exclusively to WGN Radio. ¶¶ 11, 12.

Harris alleges that WGN's explanation for his transfer was that WGN desired to make a complete separation between its television and radio boardcasting services. ¶ 12; Exh. D. WGN denies this allegation. Answer ¶ 12. On an unspecified date in August, Harris expressed concern to the WGN Radio News Director that his transfer exclusively to radio may affect his professional career development. ¶ 13. Harris alleges that WGN management assured him that the transfer would enhance his professional opportunities, would not erode his earning potential, and would in fact increase his earning potential. ¶ 13; Exh. D. WGN admits that its management assured him that the transfer would increase his opportunities, but it denies that they assured him his earning potential would not decrease. Answer ¶ 13.

Harris next alleges that on March 29, 1984, without advising him, WGN reduced his salary to the minimum possible salary it was required to pay him under a recently negotiated WGN/AFTRA [2] contract. ¶ 17. Harris alleges that this reduction cut his "income opportunity" at WGN by 50 percent. ¶ 17. Harris alleges that WGN further reduced his salary by eliminating his opportunity for assigned overtime. ¶ 28. WGN admits that Harris's salary was reduced as a result of the new WGN/AFTRA contract, but it affirmatively states that Harris's salary was specifically negotiated by WGN and AFTRA and was reduced by agreement between them. Answer ¶¶ 17, 27. WGN further responds that Harris's overtime was greatly reduced, though not eliminated, when WGN divided into separate divisions and Harris was assigned exclusively to WGN Radio. Answer ¶ 28.

Harris alleges that it was not until WGN decreased his salary that he realized that WGN had carried out a scheme to remove him from television news reporting and to decrease his earning potential. ¶ 19. Harris also alleges that WGN management's representations to him in August 1983 regarding professional opportunities and earning potential were made to lull Harris, the union steward, into complacency during the late 1983 and early 1984 AFTRA contract negotiations with WGN. ¶ 18.[3] WGN denies these allegations. Answer ¶¶ 18, 19.

On August 13, 1984, Harris filed a charge of age discrimination with the Illinois Department of Human Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC"). Neither agency took action within 60 days of the

---

**1.** Subsequent references to Harris's Complaint will be designated solely by "¶ _____." References to WGN's Answer will be designated by "Answer ¶ _____."

**2.** AFTRA is an acronym for The American Federation of Television and Radio Artists. AFTRA is the collective bargaining agent for WGN employees. It was originally a defendant in this

suit, but was dismissed from the case without prejudice on May 7, 1986.

**3.** Paragraph 19 of the Complaint erroneously states "the late *1982* and early *1983*" contract negotiations. Harris points out this error in his surreply and seeks leave to amend the complaint to reflect the correct date. Leave is granted.

date of the charge. ¶¶ 24, 33. *See* 29 U.S.C. § 626(d).

Harris next alleges that subsequent to March 1984, notwithstanding the purported separation between WGN–TV and WGN Radio staff assignments, certain younger WGN Radio staff members were given the opportunity to do television reporting. Harris requested and was refused this opportunity. ¶ 36. WGN admits this allegation, but further responds that Harris was not offered television reporting assignments because his performance and capabilities were sub-standard and incompatible with WGN's programming desires. Answer ¶ 36. Similarly, Harris alleges younger staff members were given the opportunity to work assigned overtime days which he was refused. ¶ 37. WGN denies this allegation. Answer ¶ 37.

On October 18, 1985, WGN indefinitely suspended Harris without pay. ¶ 39. Harris alleges the suspension lasted two months, was without cause, and was in violation of the WGN/AFTRA employment contract. ¶¶ 39, 40. WGN admits that Harris was suspended without pay, but denies that it was without cause or in violation of his employment contract. Answer ¶¶ 39, 40. On October 21, 1985, Harris filed a second charge of discrimination with the IDHR and the EEOC. ¶¶ 44, 51.[4] On December 9, 1985, WGN terminated Harris's employment. ¶ 40; Answer ¶ 40.

On March 14, 1986, Harris filed this action. Count I alleges that WGN removed Harris from WGN–TV solely because of his age, which was then 50, in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 ("ADEA").[5] In addition to facts set forth above, Harris alleges in further support of Count I that his television reporting assignments were given to Ms. Christine Negroni, whose age in August 1983 was 26. ¶ 20. WGN denies that Harris's assignments, as such, were "given to" Ms. Negroni, but does admit that she was hired by WGN–TV to be its City Hall reporter after it was determined that Harris would be transferred to WGN Radio. Answer ¶ 20. Harris alleges that his transfer was discriminatory and continued to December 9, 1985, the date he was terminated. ¶ 23. Count I seeks an order requiring WGN to reinstate Harris with full television reporting responsibilities and back pay, or in the alternative, to award damages in lieu of reinstatement.

Count II alleges that WGN reduced Harris's pay on or about March 29, 1984, solely because of his age, then 50, in violation of the ADEA. ¶ 32. Harris alleges that the violation continued until he was terminated. ¶ 32. In further support of Count II, Harris alleges that WGN reporters under the age of 40 did not suffer any similar reduction in pay. WGN admits this last allegation, although it also states that no reporter under 40 received pay approximating Harris's 1983 earnings. Answer ¶ 32.

Count III alleges that WGN discriminated against Harris in television reporting and overtime opportunities because of his age, then 52, and in retaliation for Harris's filing an age discrimination complaint with the IDHR and EEOC, both in violation of the ADEA. ¶¶ 42, 45.

---

**4.** Although Harris asserts that the August 13 charges were filed against the "defendants," ¶¶ 24, 33, and the October 21 charges against WGN, ¶¶ 44, 51, WGN responds in its Answer that both sets of charges were in fact filed against the Tribune Broadcasting Company, and not against WGN, a wholly owned subsidiary of the Tribune Company. Answer ¶¶ 24, 33, 44, 51. Nevertheless, notice to the Tribune Company appears to be sufficient to satisfy the notice and conciliation purposes of the exhaustion requirement and to insure that WGN has not been prejudiced by the omission. *See Borumka v. Rocky Mountain Hospital and Medical Service,* 599 F.Supp. 857 (D.Colo.1984); *Bumpers v. In-*

*ternational Mill Services, Inc.,* 595 F.Supp. 166 (D.Pa.1984). WGN apparently agrees, because it does not raise the notice issue in its motion, and we do not consider it further for that reason.

**5.** Section 623(a)(1) of Title 29 states that it is unlawful for an employer "to fail or refuse to hire or discharge or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age...."

Both Counts II and III seek an order requiring WGN to reinstate Harris at his pre-March 1984 compensation level and back pay lost as a result of the discriminatory reduction alleged in Count II and the discriminatory assignments alleged in Count III, or in the alternative, damages in lieu of reinstatement.

Finally, Count IV alleges that WGN terminated Harris without cause and solely because of his age, then 52, in violation of · the ADEA. In further support of Count IV, Harris asserts that at the time of his termination, WGN assigned Ms. Avis Lavelle Sampson, then 31 years old, to his reporting duties. ¶ 50. WGN admits that Ms. Sampson of necessity was assigned to certain news events that Harris might have been assigned to had he remained on the WGN Radio News staff. Answer ¶ 50. As an affirmative defense, WGN states that it terminated Harris pursuant to a clause in the 1984 WGN/AFTRA contract providing it with the exclusive right to terminate newspersons whose voice characteristics or reportorial talents were, in its judgment, incompatible with its programming desires. Affirmative Defense ¶ 2.

WGN then filed this motion to dismiss Count I. It asserts that because Harris did not file his complaint with the EEOC within the statutory filing period, Count I is barred by the ADEA's statute of limitations, 29 U.S.C. § 626(d). *See also* Affirmative Defense ¶ 3. Harris argues, however, that the ADEA filing requirement is not jurisdictional and that it may be tolled for equitable reasons. He asserts that he has adequately alleged facts which require the limitations period to be equitably tolled. Harris also seeks costs and attorney's fees for having to respond to WGN's motion.

## DISCUSSION

### Judgment on the Pleadings

There has been some disagreement between the parties about which rule of civil procedure to apply to WGN's motion. We treat it as a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), and we apply the standard applicable to motions to dismiss under Rule 12(b)(6).

■ The defense of limitations may be raised by motion to dismiss under Rule 12(b)(6) "when the time alleged in the complaint shows that the action was not brought within the statutory period." 2A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 12.10, at 12–85 (1985) (footnote omitted) (hereafter "Moore"). *See also Grubman v. Rubin*, No. 86 C 902, Memorandum Op. at 3 & n. 1 (N.D.Ill. Oct. 22, 1986) (Grady, J.) [Available on WESTLAW, DCTU database]. However, WGN's motion to dismiss Count I is technically not a motion to dismiss pursuant to Rule 12(b)(6) because WGN filed its Answer to the Amended Complaint prior to filing the motion. *See* 5 C. Wright & A. Miller, *Federal Practice and Procedure* §§ 1361, 1367, at 643–44, 688–89 (1969); 2A Moore ¶ 12.15, at 12–104–05. A motion to dismiss filed after the pleadings have been closed is appropriately considered a motion for judgment on the pleadings. *Id.;* Fed.R.Civ.P. 12(c); *Schy v. Susquehanna Corp.*, 419 F.2d 1112, 1115 (7th Cir.), *cert. denied*, 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970).

■ Harris contends that the same standard applies to a Rule 12(c) motion that applies to a Rule 56 motion for summary judgment. WGN argues that the standard of a Rule 12(b)(6) motion should be applied to a 12(c) motion where no evidence outside the pleadings has been submitted. Under the circumstances here, WGN is correct. Rule 12(c) provides:

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

*See also Republic Steel Corp. v. Pennsylvania Engineering Corp.*, 785 F.2d 174,

182 (7th Cir.1986) (a 12(b)(6) motion filed after the pleadings have been closed is technically a 12(c) motion, but is still considered under the 12(b)(6) standard); *Amersbach v. City of Cleveland*, 598 F.2d 1033, 1038 (6th Cir.1979) ("Rule 12(c) motion raised what was essentially a Rule 12(b)(6) defense by challenging the legal basis of the complaint.")

Thus, under a 12(c) motion, if matters outside the pleadings *have not* been submitted, we accept all well-pleaded factual allegations as true, and we dismiss the action only if "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 61 (2d Cir.1985) (citations omitted). *See also Roberts v. Northern Trust Co.*, 550 F.Supp. 729, 730 (N.D.Ill.1982); *Smith v. Lakeside Foods, Inc.*, 449 F.Supp. 171, 172 (N.D.Ill.1978). If matters outside the pleadings *have* been submitted, we convert the motion to one for summary judgment; we give all parties a reasonable opportunity to present all pertinent materials; we determine whether a disputed issue of material fact exists and if not, whether one party is entitled to judgment as a matter of law. *See Foley v. Community Oil Co., Inc.*, 64 F.R.D. 561 (D.N.H.1974).

█ Here, because no material outside the pleadings that we regard relevant to our decision has been submitted, we consider this motion under the 12(b)(6) standard.[6]

6. Harris submitted Exhibit D in support of his allegations, which includes three letters from a member of WGN management to certain members of WGN–TV's viewing public stating that Harris was being transferred because the television and radio divisions were being separated. *See* ¶ 14; Exh. D. We do not consider this exhibit sufficient to convert this motion to summary judgment. The representations in those letters were not to Mr. Harris, and WGN has denied in its Answer that it told Harris that this was the reason for his transfer. Answer ¶ 12. These letters may be appropriate at a later time, but representations to others about Harris's transfer are not relevant to this motion.

7. The purpose behind this filing requirement is two-fold: (1) it provides "the EEOC with an

### Statute of Limitations: Equitable Tolling

The ADEA provides that before a plaintiff may file an ADEA suit in federal court, he or she must first file a charge of discrimination with the EEOC. 29 U.S.C. § 626(d).[7] In most states, the charge must be filed within 180 days after the alleged unlawful practice occurred. *Id.* § 626(d)(1). In other states, however, such as Illinois, the time to file with the EEOC is extended to accommodate actions brought under state law. *Id.* § 633(b).[8] Therefore, in Illinois, one of these so-called "deferral states," the charge must be filed with the EEOC "within 300 days after the alleged unlawful practice occurred, or within 30 days after ... notice of termination of proceedings under state law, whichever is earlier." *Id.* § 626(d)(2). Here, we are only concerned with the 300 day period because Harris never received a notice of termination of the state proceedings.

█ Harris correctly points out that these filing requirments are not jurisdictional. *Stearns v. Consolidated Management*, 747 F.2d 1105, 1111 (7th Cir.1984). Rather, like statutes of limitation, they may be tolled for equitable reasons to effect the remedial purpose of the Act. *Caldwell v. National Association of Home Builders*, 771 F.2d 1051, 1056 n. 1 (7th Cir.1985); *Vaught v. R.R. Donnelley & Sons Co.*, 745 F.2d 407, 410 (7th Cir.1984); *Kephart v. Institute of Gas Technology*, 581 F.2d 1287, 1288–89 (7th Cir.1978). Furthermore, the rule in this circuit is that "all

opportunity to achieve a conciliation of the complaint while the complaint is still fresh" and (2) it gives "early notice to the employer of a possible lawsuit, thereby promoting the preservation of evidence as well as good faith negotiating on the part of the employer during the conciliation period." *Mull v. Arco Durethene Plastics, Inc.*, 784 F.2d 284, 287 n. 5 (7th Cir. 1986); *Posey v. Skyline Corp.*, 702 F.2d 102, 104 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983).

8. In Illinois, such charges of discrimination are often filed with the Illinois Human Rights Commission, as here. *See* Ill.Rev.Stat. ch. 68, ¶ 7–102.

doubts on jurisdictional timeliness points are to be resolved in favor of trial" rather than dismissal at the pretrial stage. *Caldwell,* 771 F.2d at 1054 (*citing Pastrana v. Federal Mogul Corp.,* 683 F.2d 236, 242 (7th Cir.1982)).

■■■ The date the period begins to run is generally the date of the employment decision—the notification of discharge, transfer, or refusal to hire. *Mull v. ARCO Durethene Plastics, Inc.,* 784 F.2d 284, 292 (7th Cir.1986); *Anderson v. Illinois Tool Works, Inc.,* 753 F.2d 622, 624 n. 2 (7th Cir.1985). As stated above, however, that date may be delayed or "tolled" for equitable reasons. The tolling standard we apply is that the filing period will not begin to run until "facts that would support a change of discrimination ... were apparent or should have been apparent to a person with a reasonably prudent regard for his rights similarly situated to the plaintiff." *Mull,* 784 F.2d at 291; *Vaught,* 745 F.2d at 410, 411 (both quoting *Reeb v. Economic Opportunity Atlanta, Inc.,* 516 F.2d 924, 931 (5th Cir.1975)). Where a defendant employer misrepresents or fraudulently conceals from the plaintiff the facts necessary to support his charge of discrimination, the equitable tolling standard is applicable. *Id.*[9]

■■■ Harris was transferred from television to radio on August 22, 1983, 357 days before he filed a charge with the EEOC. Harris alleges, however, that it was not until WGN cut his pay on March 29, 1984, 15 days before he filed a charge, that he realized that WGN management had carried out a scheme to remove him from television news reporting because of his age. ¶ 19. He asserts that the period of limitations should be tolled until that date because WGN made a number of misrepresentations to him that hid the fact that his removal from WGN–TV was discriminatorily motivated. These alleged misrepresentations include: (1) WGN was making a complete separation between its television and radio broadcasting services, ¶¶ 12, 36 and Exh. D; (2) Harris's transfer from television to radio would increase his opportunities because of WGN radio's 24–hour news programming, and was therefore a promotion, ¶¶ 13, 14, 37 and Exh. D; and (3) Harris's earning potential would increase as a result of the transfer, ¶¶ 13, 14, 27, 28, 37 and Exh. D. Harris also alleges that he relied on these representations in acquiescing in the transfer. ¶ 15. These allegations are all clearly pled and must be accepted as true. *See supra* p. 572.

The first alleged misrepresentation is the one we consider most significant here. If an employer gives a reason to an employee for an employment decision that appears legitimate, and the employee later learns that the reason was in fact false, this may be sufficient ground to toll the limitations period on the employee's claim. In this regard, this case is similar to *Wilkerson v. Siegfried Insurance Agency, Inc.,* 621 F.2d 1042 (10th Cir.1980). In *Wilkerson,* the defendant told the plaintiff that she was

---

9. WGN emphasizes a distinction between "equitable tolling" which usually focuses on when plaintiff should have reasonably suspected he was being discriminated against and "equitable estoppel" which usually focuses on actions of the defendant to cause the defendant to delay filing his charge. *See Mull,* 784 F.2d at 291. WGN suggests that each involves distinct elements and that actions taken by the defendant may only be used to support an equitable estoppel claim. However, we do not understand these bases to be so distinct. A complete reading of *Mull* and the cases it relies on shows that such a sharp distinction between the two principles was never intended. Clearly, the reasons given by an employer for an employment decision are relevant to when the employee reasonably suspected discrimination, as are any actions taken by an employer that might affect the employee's reasonable reliance. *See Mull,* 784 F.2d at 292 (*quoting Naton v. Bank of California,* 649 F.2d 691, 696 (9th Cir.1981)). The court in *Wilkerson v. Siegfried Insurance Agency, Inc.,* 621 F.2d 1042 (10th Cir.1980), stated, "[A]ction by an employer which misleads an employee and causes him to fail to give notice ... [is] a factor to be considered in connection with equitable tolling *or* estoppel." *Id.* at 1045 (emphasis added). Furthermore, "[w]hether to grant equitable relief from the statutory provisions is determined 'on a case-by-case basis, depending on the equities of the case.'" *Naton,* 649 F.2d at 696 (citation omitted). *See also Bonds v. Coca-Cola Company,* 806 F.2d 1324, 1330–31 & nn. 1–3 (7th Cir.1986) (Swygert, J., concurring in part and dissenting in part).

being discharged because her position was being eliminated. The plaintiff later learned that her position had in fact not been eliminated, and the court held that the plaintiff had a sufficiently arguable claim for equitable tolling to require an evidentiary hearing on the issue. *Id.* at 1095.

Moreover, the alleged concealment here supports tolling even more strongly than where an employee is discharged. In cases of employment discharge, the filing period begins to run on the date the employee is informed of the discharge. *See Mull,* 784 F.2d at 291; *Anderson,* 753 F.2d at 624 n. 2. There is usually little doubt that upon discharge, "a person with reasonably prudent regard for his rights" is aware of or will investigate the facts that may support the claim that the discharge was discriminatory. *Cf. Mull,* 784 F.2d at 291. Transfers are different. Employees might be less likely to investigate a transfer because they are being kept on. Where, as here, Harris was transferred from a joint assignment to one exclusively involving radio, and was told that the change was company wide, we cannot say that the date he was informed of the transfer was the date facts supporting a charge of discrimination were or should have been apparent to him.[10]

WGN focuses on the third alleged misrepresentation to the exclusion of the first two (presumably because Harris does) and argues that statements about Harris's earning potential go only to his allegations in Count II concerning the cut in pay and cannot support an equitable tolling argument as to Count I regarding his transfer. We disagree.

Taking Harris's allegations as true, WGN told Harris that his transfer was due to the separation of divisions. Harris expressed concern about this transfer, and, in response to his inquiries, he was told that his opportunities and earning potential would increase. We believe these representations could serve to conceal that his removal from television was discriminatory. The fact that Harris includes in his complaint a count about a subsequent, allegedly discriminatory cut in pay, does not make all representations to Harris about his pay relevant only to that count and irrelevant to his transfer. *Cf. Caldwell,* 771 F.2d at 1057.

Harris's allegation that it was not until WGN reduced his salary that he realized he was being discriminated against sufficiently states a claim for equitable tolling of the ADEA's limitation period.[11] It is a claim which he "is entitled to offer evidence to support...." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). *See also Wilkerson,* 621 F.2d at 1045. Given that opportunity, Harris must "produce evidence that [WGN] concealed the basic facts disclosing the existence of a cause of action, and that [he] remained in ignorance of those facts through no fault of his own." *Brunswick Corp. v. Riegel Textile Corp.,* 578 F.Supp. 893, 897 (N.D. Ill.1983), *aff'd,* 752 F.2d 261 (7th Cir.1984), *cert. denied,* 472 U.S. 1018, 105 S.Ct. 3480, 87 L.Ed.2d 615 (1985). *See also Baker v. F & F Investment,* 420 F.2d 1191, 1199 (7th Cir.), *cert. denied,* 400 U.S. 821, 91 S.Ct. 40, 27 L.Ed.2d 49 (1970).

**Sanctions Under Rule 11**

■ In Harris's memoranda, he suggests he should be entitled to attorney's fees for having to respond to this motion. We disagree. Harris failed to file his claim with the EEOC within 300 days of the date of his transfer, the date that presumptively begins the running of the limitations period. WGN therefore made a perfectly proper motion to dismiss on limitations

---

**10.** WGN argues that because Harris is the AFTRA union steward at WGN and was a WGN employee for 20 years, he should have discovered the alleged discrimination much earlier than he claims to have discovered it. WGN's Surrebuttal in Support at 4 n. 2. These arguments may be appropriate at a later time, but they are not relevant to our determination of whether Harris has sufficiently stated a legal claim for equitable tolling.

**11.** Because Harris has sufficiently stated a claim for equitable tolling under the fraudulent concealment doctrine, we do not need to consider his argument that his being removed from television was a continuing violation.

grounds, and in fact, its memorandum in support was two pages long, a rare occurrence in this court, and one that is to be commended. It was not WGN's responsibility to raise or analyze Harris's fraudulent concealment argument for him. The burden is on Harris to allege and ultimately to support his claim for an equitable modification of the limitations period.

This motion raised a legitimate dispute over what can often be a complex issue. Both parties supported their claims with appropriate cases and analyses. Harris won. But Rule 11 is designed to impose sanctions on lawyers who objectively fail to present viable claims or defenses; it is not an adoption of the British rule of fee imposition on the non-prevailing party. *See Frazier v. Cast*, 771 F.2d 259, 263 (7th Cir.1985); *Brainerd & Bridges v. Weingeroff Enterprises, Inc.*, No. 85 C 493, Memorandum Op. at 17–18 n. 7 (N.D.Ill. Sept. 13, 1985) (Grady, J.) [Available on WESTLAW DCTU database]; *Fleming Sales Co. v. Bailey*, 611 F.Supp. 507, 520 (N.D.Ill.1985). Fees are imposed only when an attorney "tak[es] an objectively unsupported position," *FDIC v. Elefant*, 790 F.2d 661, 667 (7th Cir.1986), or "fail[s] to make a reasonable inquiry into the factual and legal basis for the claim he asserts." *Brown v. National Board of Medical Examiners*, 800 F.2d 168, 172 (7th Cir.1986). *See also Brainerd & Bridges*, Memorandum Op. at 17–18 n. 7. Neither occurred here.

Moreover, a claim of violation of Rule 11 is a serious charge and can itself form the basis of a Rule 11 sanction. *See Brainerd & Bridges*, Memorandum Op. at 17–18 n. 7; *AM International, Inc. v. Eastman Kodak Co.*, 39 F.R.Serv.2d 433 (N.D.Ill.1984). We therefore admonish counsel for Harris to be more circumspect in his accusations of "specious" conduct. *See* Harris's Surreply in Opposition at 6.

## CONCLUSION

For the reasons stated above, WGN's motion to dismiss Count I is denied. Harris's suggestion for Rule 11 sanctions is also denied.