61 F.3d 905
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Doctor Virginia Naples KELECIC, Plaintiff/Appellant,
v.
BOARD OF REGENCY UNIVERSITIES, a body politic doing business
as Northern Illinois University, Defendant/Appellee.
 No. 95-1149.
 United States Court of Appeals, Seventh Circuit.
 Argued July 6, 1995.
Decided July 21, 1995.
 
 Before CUMMINGS, CUDAHY and COFFEY, Circuit Judges.
 
 ORDER
 
 1
 Dr. Virginia Kelecic appeals the district court's entry of summary judgment for the defendant on Kelecic's claim of sexual harassment brought pursuant to 42 U.S.C. Secs. 2000e et seq.. We affirm.
 
 I. BACKGROUND
 
 2
 Dr. Virginia Kelecic is a professor in the Department of Biological Sciences (the Department) of Northern Illinois University (NIU). Culminating in an incident of improper touching in April or May of 1989, Kelecic claims she was sexually harassed by the Department's office supervisor, Lydia Kaplan. After the incident, Kelecic talked to Department chair Dr. Marvin Starzyk. He asked Kelecic to accept Kaplan's apology, but Kelecic refused. Starzyk advised Kelecic that filing an official complaint might adversely affect her chances for tenure. Kelecic also spoke with Carla Montgomery, an NIU dean. Montgomery agreed that Kelecic's chances for tenure might be threatened by any action on the matter.
 
 
 3
 Finally, Kelecic telephoned NIU legal counsel George Shur. Shur expressed the opinion that Kelecic should be careful of her actions because Kelecic was not yet tenured. Kelecic stated in her complaint that she believed Shur acted as her attorney and provided legal advice for her benefit. Kelecic states that she did not initiate an attorney-client relationship as such, because she did not understand that a formal agreement was necessary. The parties agree that Shur did not advise Kelecic that he represented NIU's interests or that a potential conflict of interest existed.
 
 
 4
 On May 17, 1990, Kelecic was granted tenure. Soon thereafter, Kelecic telephoned Shur for further advice about the incident with Kaplan. Shur advised her to consult with the University's Office of Affirmative Action (AA). The AA office informed Kelecic of her rights and the process by which she could pursue a claim with the Equal Employment Opportunity Commission (EEOC). Kelecic filed a complaint with the AA office on May 29, 1990, describing Kaplan's pattern of sexual comments and asking sexual questions, culminating with the incident involving improper touching. The AA office investigated Kelecic's claims and concluded that Kaplan's denials of any wrongdoing were incredible and that Kelecic's claims were corroborated. The AA office recommended a letter of reprimand be placed in Kaplan's personnel file, that she be trained as to NIU's sexual harassment policy, and the Department determine if any other action should be taken.
 
 
 5
 On April 1, 1991, Kelecic filed a charge with the EEOC. The EEOC found that the charge had not been timely filed. On December 7, 1992, Kelecic brought suit against the Board of Regents of NIU, pursuant to Title VII of the Civil Rights Act of 1964. 42 U.S.C. Secs. 2000e et seq.. NIU moved for summary judgment, which the district court granted. While the district court concluded that equitable estoppel tolled the statute of limitations from running for the period before Kelecic was granted tenure, Kelecic's claim was still untimely as she failed to file her claim within 300 days of the tenure decision. Kelecic appeals.
 
 II. STANDARD OF REVIEW
 
 6
 We review a grant of summary judgment de novo, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), viewing the record and the inferences drawn from it in the light most favorable to the non-moving party. Frey v. Fraser Yachts, 29 F.3d 1153, 1156 (7th Cir.1994). This court will affirm if there is no genuine issue of material fact such that judgment is proper as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).
 
 III. DISCUSSION
 
 7
 Title VII governs actions for sexual harassment. 42 U.S.C. Secs. 2000e et seq. (as amended). By statute, Kelecic only has 300 days in which to file a charge of discrimination with the EEOC after the alleged discriminatory act. 42 U.S.C. Sec. 2000e-5(e); EEOC v. Harris Chernin, Inc., 10 F.3d 1286, 1288 n. 3 (7th Cir.1993). Equitable estoppel can stop the running of this limitations period in certain situations. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982); Cada v. Baxter Healthcare Corp., 920 F.2d 446, 451 (7th Cir.1990), cert. denied, 501 U.S. 1261 (1991). Equitable estoppel "comes into play if the defendant takes active steps to prevent the plaintiff from suing in time, as by promising not to plead the statute of limitations." Cada, 920 F.2d at 451; Chakonas v. City of Chicago, 42 F.3d 1132, 1135 (7th Cir.1994); see also Hamilton v. Dresser Indus., Inc., 964 F.2d 600, 605 (7th Cir.) (active steps are "either of a deliberate design by the employer or of actions that an employer should unmistakably have understood would cause the employee to delay filing" an EEOC charge), cert. denied, 113 S.Ct. 324 (1992). The "granting of equitable estoppel should be premised on a defendant's improper conduct as well as a plaintiff's actual and reasonable reliance thereon." Wheeldon v. Monon Corp., 946 F.2d 533, 537 (7th Cir.1991) (citing Mull v. ARCO Durethene Plastics, Inc., 784 F.2d 284 (7th Cir.1986)).
 
 
 8
 NIU renews its argument brought before the district court that Kelecic's limitations period began to run at the time of the touching incident in May of 1989, the culmination of other incidents of touching and sexual comments. NIU asserts that the doctrine of equitable estoppel does not apply at all and therefore Kelecic's claim is untimely. The district court concluded that NIU's actions discouraging Kelecic from taking any action until she had tenure stopped the running of the 300 day period until she was awarded tenure in May of 1990. See District Court Order at 12 ("the message from these officials clearly induced Kelecic to forego pursuing the matter further until after the original 300-day window had run").
 
 
 9
 This issue can be looked at in two ways. On the one hand, Kelecic met with Starzyk, her department chair, Montgomery, an NIU dean, and Shur, NIU counsel. All advised her not to pursue the claim at that time due to her lack of tenure. Given Kelecic's concern for her career, she waited until she was granted tenure to proceed with any official action. Kelecic was granted tenure about one year after the incident, and therefore was too late to file a charge with the EEOC within 300 days of the incident.
 
 
 10
 On the other hand, NIU did nothing to dissuade Kelecic from actually filing a charge, see Lever v. Northwestern Univ., 979 F.2d 552, 556 (7th Cir.1992), cert. denied, 113 S.Ct. 2443 (1993), and although the officials advised Kelecic about the effect on her chances for tenure, no one gave her any false information or made any promises. Id. (University offered many "forums of persuasion," but such opportunities do not serve as a source for equitable estoppel).
 
 
 11
 We conclude that although Kelecic followed the advice from the University officials, she made a choice whether to pursue her claim. To attribute her decision to NIU's conduct is not supported by the facts here because the University took no steps to prevent Kelecic from seeking relief in any forum or improperly induced her to sleep on her rights. Chakonas, 42 F.3d at 1136.[1] While Kelecic followed the advice of the three officials, she could have determined that despite its effect on her chances for tenure, she nonetheless would pursue a claim. She chose not to do so.
 
 
 12
 Even if Kelecic's limitations period began to run when she was granted tenure, as the district court determined, her claim must fail. Kelecic did not file a charge with the EEOC within the 300 days of the tenure decision, and we conclude that no further tolling is applicable here.
 
 
 13
 Kelecic asserts that she relied on defendant's advice, specifically Shur's, which did not include information regarding the statute of limitations for a sexual harassment claim. We conclude that this argument for estoppel is without merit. Once directed to the AA office by Shur immediately after she received tenure, Kelecic was informed of her options and chose to pursue a University investigation. See Lever, 979 F.2d at 556 ("Excessive kindness in providing many and varied opportunities for internal review is not the sort of deception that supports equitable estoppel."). That she waited for the results of the investigation and three months more cannot be attributed to NIU as "active steps" taken by the University to prevent Kelecic from suing in time. Cada, 920 F.2d at 451; see Lever, 979 F.2d at 556 (university did nothing to dissuade plaintiff from filing a charge).
 
 IV. CONCLUSION
 
 14
 The doctrine of equitable estoppel does not apply to Kelecic's claim because NIU's actions do not rise to the level of improper conduct. The facts do not support a tolling of the limitations period past the grant of tenure. As a result, Kelecic did not timely file her charge with the EEOC within 300 days of the touching incident. Even if the claim's limitations period began to run when Kelecic was granted tenure, Kelecic still failed to file a charge with the EEOC within 300 days. Therefore, summary judgment was proper and we AFFIRM.
 
 
 
 [1]
 See Kelecic Deposition at 43 (Q. Aside from advising you that it would not be a good idea to take action because of your tenure situation, did he give you any other reason not to take action? A. No)