376 S.E.2d 612

**INDEPENDENT FIRE COMPANY NO. 1**

v.

**WEST VIRGINIA HUMAN RIGHTS COMMISSION and Daniel Lutz.**

No. CC984.

Supreme Court of Appeals of West Virginia.

Dec. 21, 1988.

John C. Skinner, Jr., F. Samuel Byrer, Nichols & Skinner, Charles Town, for appellant.

Robert S. Baker, Beckley, for Lutz.

Sharon Mullins, Asst. Atty. Gen., Charleston, for HRC.

MILLER, Justice.

This certified question proceeding [1] from the Circuit Court of Jefferson County rais-

---

1. The following question was certified by the circuit court:

"Inasmuch as the hearing examiner found that Mr. Lutz was indefinitely suspended by

es two questions of first impression concerning the timely filing of a complaint with the West Virginia Human Rights Commission ("HRC" or "Commission"): (1) whether the statutory time period for filing a complaint with the HRC [2] is jurisdictional in nature, or rather is akin to a statute of limitations which can be waived or modified by traditional equitable doctrines; and (2) when does the limitation period commence to run in a case where an employee is told he is being indefinitely suspended, not terminated, and is subsequently denied reinstatement.

## I.

The facts and procedural history of the case are not complicated and will be reviewed only to the extent necessary to resolve the legal issues raised in this proceeding. The complainant, Daniel Lutz, was a member of the Independent Fire Company, No. 1, Inc., a volunteer fire company located in Shepherdstown, West Virginia, from March 1, 1969, until May 9, 1977, when he was indefinitely suspended from membership.

Prior to his suspension, the complainant had endorsed the application of a female, Debbie Armstrong, for membership in the volunteer fire company. A committee conducted an investigation concerning her character and background and, at a regular meeting on May 5, 1977, issued a favorable report on her application. The membership then voted to reject her membership application.[3] The complainant made a motion

for reconsideration, but the motion was ruled out of order. At that point in time, the volunteer fire company had never had a female member.

After the May 5, 1977 meeting had adjourned, the complainant was interviewed by a newspaper reporter from Hagerstown, Maryland, and discussed the results of the membership vote. A subsequent newspaper article concerning the rejected application, published on May 7, 1977, contained several comments made by the complainant. On May 9, 1977, the complainant was at the firehall and was confronted by Donald W. Clendening, the president of the organization, and two other company officers. He was advised that the Board of Directors had voted to indefinitely suspend him from the fire company. After this notification of his suspension, the complainant in June, 1977, contacted an attorney who sought to secure his reinstatement. By letter of November 4, 1977, the complainant was advised by his counsel that attempts to negotiate his reinstatement had been fruitless.

The Commission concluded it had jurisdiction over the complaint as it had been filed on January 30, 1978, and was thus filed within ninety days after the complainant was denied reinstatement on November 4, 1977. The Commission also concluded that the respondent organization was a public accommodation subject to the Human Rights Act [4] and had engaged in a practice of denying females access to the privileges of membership. *See Shepherds-*

the Independent Fire Co. on May 9, 1977, and that Mr. Lutz did not file his complaint with the Human Rights Commission until January 30, 1978, did the West Virginia Human Rights Commission have jurisdiction in this matter?"

**2.** The time period for filing an administrative complaint with the HRC under W.Va.Code, 5–11–10 (1971), was at the time of this incident "within ninety days after the alleged act of discrimination." In 1987, the time period was changed to one hundred eighty days. 1987 W.Va.Acts ch. 64.

**3.** To gain membership in the fire company, an applicant must submit an application endorsed by a current member. A three-member committee then conducts an investigation into the background of the applicant and a report is

made to the membership present at the next regular meeting. When the report is favorable, the members vote by a "blackball" system, which involves each member present placing a white or black marble into a container. A 75 percent favorable vote is required to gain membership.

**4.** W.Va.Code, 5–11–9(f), states, in pertinent part:

"It shall be an unlawful discriminatory practice ... [f]or any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodations to: (1) Refuse, withhold from or deny to any individual because of his ... sex ... any of the accommodations, advantages, facilities, privileges or services of such place of public accommodations[.]"

*town Volunteer Fire Dep't v. State ex rel. W. Va. Human Rights Comm'n*, 172 W.Va. 627, 633, 309 S.E.2d 342, 348 (1983).[5] The Commission found that although the complainant may have violated many of the respondent organization's By–Laws during his membership, he had been suspended for his actions surrounding the endorsement of a female for membership with the organization. The fire company retaliated against the complainant because of his sponsorship of a female for membership and had, therefore, violated the Act.

The respondent organization appealed, contending that the Commission had no jurisdiction over the case, and the circuit court certified the question set forth in note 1, *supra*. The circuit court answered the question in the negative, rejecting the argument that the complainant's indefinite suspension was a continuing violation of the law that was not complete until he was denied reinstatement in November, 1977. The circuit court reasoned that the complainant's indefinite suspension was tantamount to a termination which commenced the time period for filing an administrative complaint.

## II.

■ The foremost question presented in this appeal concerns the nature of the time period for filing an administrative complaint alleging an unlawful discriminatory practice in violation of the Human Rights Act. The United States Supreme Court in *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), considered a similar question involving whether the statutory time limit for filing charges with the Equal Employment Opportunity Commission (EEOC) under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, is a jurisdictional bar to instituting an action in federal court. In a unanimous opinion by Justice White, the Supreme Court held that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a

statute of limitations, is subject to waiver, estoppel, and equitable tolling." 455 U.S. at 393, 102 S.Ct. at 1132, 71 L.Ed.2d at 243. (Footnote omitted). The Supreme Court stated that to hold the filing period was not jurisdictional was to "honor the remedial purpose of the legislation as a whole without negating the particular purpose of the filing requirement, to give prompt notice to the employer." 455 U.S. at 398, 102 S.Ct. at 1135, 71 L.Ed.2d at 246–47.

*Zipes*, of course, is not controlling here, but it is not without persuasive force. Unfortunately, in *Zipes*, the Supreme Court, while holding that the failure to file with the federal EEOC within the ninety-day period did not bar the district court's jurisdiction, it did not explain what equitable event caused the tolling. Nor does it appear that the Supreme Court has addressed this question in any detail.

One of the better discussions of this question is found in *Mull v. ARCO Durethene Plastics, Inc.*, 784 F.2d 284, 291 (7th Cir.1986), where the court made this general statement:

"Indeed, two types of equitable modification are generally recognized: '(1) equitable tolling, which often focuses on the plaintiff's excusable ignorance of the limitations period and on lack of prejudice to the defendant and (2) equitable estoppel, which usually focuses on the actions of the defendant.' *Naton v. Bank of California* 649 F.2d 691, 696 (9th Cir.1981) (citations omitted)."

The court in *Mull*, 784 F.2d at 291, then proceeded to a more specific statement as to the concept of equitable tolling:

"Dealing first with equitable tolling, it is well-established that the limitations period is tolled until ' "facts that would support a charge of discrimination ... [are] apparent or should [be] apparent to a person with a reasonably prudent regard to his rights similarly situated to the plaintiff." ' *Vaught [v. R.R. Donnelley & Sons Co.*, 745 F.2d 407] at 410–11 [ (7th Cir.1984) ] (quoting *Reeb v. Eco-*

---

**5.** This case involved sex discrimination charges brought by several other women who had been denied membership in the Shepherdstown Volunteer Fire Department.

*nomic Opportunity Atlanta, Inc.*, 516 F.2d 924, 931 (5th Cir.1975))."

It then discussed in some detail the doctrine of equitable estoppel:

"Equitable estoppel is available only if the employee's otherwise untimely filing was the result 'either of a deliberate design by the employer or of actions that the employer should unmistakably have understood would cause the employee to delay filing his charge.' *Price v. Litton Business Systems, Inc.*, 694 F.2d 963, 965 (4th Cir.1982). Among other factors, the granting of equitable estoppel should be premised upon (1) 'a showing of the plaintiff's actual and reasonable reliance on the defendant's conduct or representations' and (2) 'evidence of improper purpose on the part of the defendant or of the defendant's actual or constructive knowledge of the deceptive nature of its conduct.' *Naton*, 649 F.2d at 696." 784 F.2d at 292.[6]

A number of state courts have also held that the limitation period for filing a discrimination complaint is not jurisdictional and is subject to equitable tolling principles. *E.g., Carlson v. Independent School Dist. No. 623*, 392 N.W.2d 216 (Minn.1986) (in claims arising after 1981); *Christo v. Edward G. Boyle Ins. Agency, Inc.*, 402 Mass. 815, 525 N.E.2d 643 (1988); *Cope-*

*land v. Desert Inn Hotel*, 99 Nev. 823, 673 P.2d 490 (1983); *see generally* B. Schlei & P. Grossman, Employment Discrimination Law ch. 28 (2d ed. 1983). The Massachusetts Supreme Court in *Christo* relied on *Zipes* in coming to a similar conclusion, and found that if "Christo was misled by agency employees ... from filing a timely complaint with the [agency], perhaps the six-month filing period should be tolled[.]" 402 Mass. at 817, 525 N.E.2d at 645.

We have never expressly considered the legal character of the time period for filing a discrimination complaint with the Commission, though we have on occasion made some reference to the requirement being jurisdictional in nature.[7] For example, in *West Virginia Human Rights Comm'n v. United Transp. Union, Local No. 655*, 167 W.Va. 282, 290–91, 280 S.E.2d 653, 658 (1981), we stated that the filing requirement is "a jurisdictional prerequisite ... and is nonwaivable."[8] *See also Sharp v. Southern West Virginia Regional Health Council*, 178 W.Va. 196, 198, 358 S.E.2d 455, 457 (1987); *Allen v. State Human Rights Comm'n*, 174 W.Va. 139, 324 S.E.2d 99 (1984).

We agree with the general reasoning of the foregoing authorities which hold that

---

**6.** *Mull*, 784 F.2d at 292, also reviewed specific cases which involve equitable tolling and estoppel fact patterns:

"Pursuant to this standard, courts have held that an employer's attempts to lessen the adverse impact of an employment decision will not as a matter of law serve to toll the limitations period. *E.g., Mogley v. Chicago Title Insurance Co.*, 719 F.2d 289, 290–91 (8th Cir. 1983) (per curiam) (limitations period not tolled by employee being given option of remaining on payroll until retirement benefits accrue); *Kriegesmann v. Barry–Wehmiller Co.*, 739 F.2d 357, 358–59 (8th Cir.) (per curiam) (limitations period not tolled by employer's attempt to find employee other work), *cert. denied* 469 U.S. 1036, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984); *Kazanzas v. Walt Disney World Co.*, 704 F.2d 1527, 1532 (11th Cir.) (same), *cert. denied*, 464 U.S. 982, 104 S.Ct. 425, 78 L.Ed.2d 360 (1983). Similarly, an 'employee's hope for rehire' or for 'a continuing employment relationship' in any capacity does not necessarily justify the exercise of equitable estoppel. *Price*, 694 F.2d at 965–66. *Accord Lawson v. Burlington Industries, Inc.*,

683 F.2d 862, 864 (4th Cir.), *cert. denied*, 459 U.S. 944, 103 S.Ct. 257, 74 L.Ed.2d 201 (1982). *See Caldwell v. National Association of Home Builders*, 771 F.2d 1051, 1056 n. 1 (7th Cir. 1985)."

**7.** The Supreme Court in *Zipes* was confronted with much the same situation and noted that "[a]lthough our cases contain scattered references to the timely-filing requirement as jurisdictional, the legal character of the requirement was not at issue in those cases...." 455 U.S. at 395, 102 S.Ct. at 1133, 71 L.Ed.2d at 245.

**8.** *United Transp. Union* involved a facially neutral seniority system that had the effect of perpetuating prior discriminatory practices. This Court held that the operation of the seniority system in these circumstances constituted a continuous violation of the Human Rights Act. The circuit court in the order of certification was quite right in observing that *United Transp. Union* is not helpful in determining when the statute of limitations begins to run in a discriminatory discharge case.

the limitation period is not jurisdictional. "[T]his Court has consistently interpreted the West Virginia Human Rights Act broadly," *Shepherdstown Volunteer Fire Dept. v. State ex rel. W.Va. Human Rights Comm'n,* 172 W.Va. at 633, 309 S.E.2d at 348, in accordance with the legislative directive that "[t]he provisions of this article shall be liberally construed to accomplish its objectives and purposes." W.Va.Code, 5–11–15 (1967).[9] It would seem especially inappropriate to treat the filing requirement as jurisdictional in nature given the fundamental character of the interests protected by the Act. The legislature in W.Va.Code, 5–11–2, declared that equal opportunity in employment, housing, and public accommodations is a human or civil right and then eloquently stated: "The denial of these rights to properly qualified persons ... is contrary to the principles of freedom and equality of opportunity and is destructive to a free and democratic society."

We, therefore, hold that under W.Va. Code, 5–11–10, the time period for filing a complaint with the HRC alleging a violation of the Human Rights Act is not jurisdictional in nature and is subject to waiver and equitable doctrines of tolling and estoppel.

In view of our holding in Part III, *infra,* we need not for purposes of this portion of the certified question determine whether there are facts that can be advanced to trigger a tolling under these doctrines.

### III.

■ The second question addressed is when does the limitation period begin to run where an employee or member of an organization is told he is being indefinitely suspended, and then is subsequently denied reinstatement. In order to answer this question, we again look to federal decisions for guidance because of the statutory similarities and the greater number of precedents.

The Supreme Court in *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), which involved an allegedly discriminatory denial of tenure to a college professor, held the limitation period began to run when the tenure decision was made and communicated to the faculty member. At this point, he was given a one-year terminal contract. He claimed the limitations period should not start until this employment contract terminated. This was rejected by the Supreme Court, which concluded that the proper focus was upon the time the discriminatory act occurred and not on its ultimate effect. The Supreme Court cautioned, however, that discriminatory discharge cases can present widely varying circumstances and must be decided on a "case-by-case basis." 449 U.S. at 258 n. 9, 101 S.Ct. at 504 n. 9, 66 L.Ed.2d at 440 n. 9. The Supreme Court also noted that limitations periods "should not commence to run so soon that it becomes difficult for a layman to invoke the protection of the civil rights statutes." 449 U.S. at 262 n. 16, 101 S.Ct. at 506 n. 16, 66 L.Ed.2d at 442 n. 16.[10]

The *Ricks* Court also reaffirmed its earlier ruling in *International Union of Elec-*

---

**9.** If the legislature had intended the limitation period to be strictly jurisdictional in nature and not subject to modification based on equitable principles, it could easily have expressed such purpose in more explicit language. For example, W.Va.Code, 23–4–15 (1986), provides, in part, that "[t]o entitle any employee ... to [workers'] compensation ... the application therefor must be ... filed in the office of the commissioner within two years from and after the injury ... and unless so filed within such two-year period, the right to compensation ... shall be forever barred, such time limitation being hereby declared to be a condition of the right and hence jurisdictional...." *See* Sylla-bus Point 2, *Fucillo v. State Workers' Compensation Comm'r,* 180 W.Va. 595, 378 S.E.2d 637.

**10.** Another discharge case involving educational administrators was considered in *Chardon v. Fernandez,* 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6, 9 (1981). The Supreme Court stated that under the *Ricks* analysis "the proper focus is on the time of the *discriminatory act,* not the point at which the *consequences* of the act become painful." (Emphasis in original). There being no subsequent acts alleged to be illegal, the Supreme Court held the limitation period began to run when the administrators were notified of the terminations, not on the date when their employment ended.

*trical Workers v. Robbins & Myers, Inc.*, 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976), which established that the pendency of a grievance or some other method of challenging the discharge decision does not toll the running of the limitation period.

The federal courts generally hold that the discharge notice must be definite or unequivocal before the time period for filing a charge with the EEOC begins to run. *Calhoun v. Federal Nat'l Mortgage Ass'n*, 823 F.2d 451 (11th Cir.1987), *cert. denied*, 484 U.S. 1078, 108 S.Ct. 1058, 98 L.Ed.2d 1019 (1988); *Mull v. Arco Durethene Plastics, Inc., supra; Miller v. International Tel. and Tel. Corp.*, 755 F.2d 20 (2d Cir.), *cert. denied*, 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985); *Monnig v. Kennecott Corp.*, 603 F.Supp. 1035 (D.Conn.1985).

Federal courts are also in agreement that the failure to rehire after an alleged discriminatory discharge, absent an independent discrete act of discrimination, does not constitute a new or continuing violation of the civil rights laws. Otherwise, the limitation period could always be circumvented by simply reapplying for employment. *Burnam v. Amoco Container Co.*, 755 F.2d 893, 894 (11th Cir.1985) (Age Discrimination in Employment Act); *Miller v. International Tel. & Tel. Corp., supra* (same); *Lawson v. Burlington Indus., Inc.*, 683 F.2d 862 (4th Cir.), *cert. denied*, 459 U.S. 944, 103 S.Ct. 257, 74 L.Ed.2d 201 (1982) (same); *Collins v. United Air Lines, Inc.*, 514 F.2d 594, 596 (9th Cir.1975) (Title VII).

We find *Ricks* and the other authorities persuasive and, therefore, adopt the rule that in cases alleging a discriminatory discharge from employment under W.Va. Code, 5–11–10, the time period for filing a complaint with the HRC ordinarily begins to run on the date when the employer unequivocally notifies the employee of the termination decision.

■ The question remains as to when the limitation period should begin to run in the unusual circumstances of this case. This issue was developed rather extensively at the HRC level as the time-bar claim was raised at that level. The complaint alleges and the HRC found that the complainant was suspended in May, 1977, in retaliation for his having sponsored a female to membership in the respondent organization. Likewise, the complaint alleged and the HRC found that the complainant was denied reinstatement on November 4, 1977. The complaint was filed on January 30, 1978, and is timely if the ninety-day limitation period did not start running until the complainant was denied reinstatement.

If the complainant had been told in May, 1977, that he was expelled or terminated, rather than suspended indefinitely, we would find that the limitation period began to run at that time, and the complaint would thus be untimely. The record in this case, however, shows that the complainant was told at that time that he was indefinitely suspended, not terminated.[11] It also appears that the complainant's suspension was not accomplished in accordance with Article XV of the fire company's By–Laws, which required a two-thirds vote of the membership present to expel a member of the fire company.

Shortly after being told of the suspension, the complainant contacted an attorney. According to the complainant's testimony, his attorney requested that he be reinstated and conducted negotiations with

---

**11.** One of the officers in the respondent organization testified:

"Q Now, when you talk about a suspension, that means Mr. Lutz could not come back into the company?

"A Indefinite suspension was the word we used and we were specific. I can remember the discussion on that because we didn't want it to appear that we were throwing him out completely and that he couldn't come back; suspension not an expulsion.

"Q So you called it an indefinite suspension?

"A Correct and that was the way it was defined to him the night of our meeting, with him that same evening.

"Q Did you tell him how he could come back into the company if at all?

"A I don't believe we spelled it out specifically at that time. I don't recall."

a legal representative of the fire company. On November 4, 1977, he received a letter from his attorney indicating that the settlement offer was being withdrawn.[12]

Given this particular situation, we do not believe the limitation period should be held to have begun to run until November, 1977.[13] The complaint here alleges not only a discriminatory suspension in reprisal for sponsoring a female for membership in the fire company, but also a subsequent refusal to reinstate the complainant to membership. This case can be viewed in two ways. First, it can be viewed as a discriminatory termination of membership, analogous to an employment discrimination case, where the termination does not become a completed act of discrimination until it becomes reasonably clear to the complainant that he has been, in fact, terminated. Second, the refusal to reinstate the complainant can be seen as a separate and distinct act of alleged discrimination which occurred within the then-existing limitation period. When viewed from either perspective, the complaint was timely filed with the HRC.

Certainly, the complainant here did not receive unequivocal notice of his termination in May, 1977, in view of tentative nature of statements made to him at that time. The notice given here can be distinguished from the letter in *Ricks* which advised a college teacher that he had been denied tenure. There, the letter itself described the adverse tenure decision as being the "official position" of the Board. 449 U.S. at 261, 101 S.Ct. at 505, 66 L.Ed.2d

at 441. Here, the complainant was suspended, not expelled, and the suspension itself was in apparent violation of the fire company's By-Laws. We, therefore, believe the Commission's decision finding that the complaint was timely filed should be affirmed.

Consequently, we answer the question certified to us in the affirmative and conclude that the HRC did have jurisdiction over the case. For the reasons stated in this opinion, the ruling of the trial court is reversed.

Ruling on certified question reversed.

---

12. The complainant testified as follows:
    "Q Mr. Lutz, your complaint in this proceeding states that on many occasions and as recently as November 4, 1977, you petitioned for your reinstatement to the fire department?
    "A Yes.
    "Q Can you state for the record how that occurred?
    "A Well, the petition for reinstatement took the form through my attorney of requesting that I be readmitted to membership, and this was through negotiations through the late Mr. Bower and Mr. Heiskell, and it was rejected by the fire company.
    "Q Was the last date of that petition for reinstatement November 4, 1977?
    "A Yes, that was the date we received a letter or Mr. Heiskell forwarded a letter to me

saying that we are withdrawing any offers from the fire company.
    "Q Because they had not accepted an offer for your reinstatement with property damages?
    "A Yes.

13. It is, therefore, unnecessary for us to apply equitable principles of waiver, estoppel, and tolling in this case. We have nonetheless chosen to decide the question of whether the limitation period for filing a complaint with the HRC is jurisdictional in nature, because of the critical importance of the question in human rights cases and to give guidance to the bench and bar concerning this issue.