378 S.E.2d 843

**James D. NAYLOR**

v.

**WEST VIRGINIA HUMAN RIGHTS COMMISSION and Bird Machine Company, Inc.**

No. 18129.

Supreme Court of Appeals of West Virginia.

Decided March 13, 1989.

Dan L. Hardway, Hardway & Cometti, Charleston, for appellant.

Phillip D. Gaujot, Cross Lanes, for appellees.

PER CURIAM:

This is an appeal from a final decision of the West Virginia Human Rights Commission,[1] dismissing an age discrimination complaint filed by James D. Naylor for lack of jurisdiction. Mr. Naylor contends that the Commission erred in ruling that the complaint was not timely filed. We disagree, and we affirm the decision of the Commission.

In October, 1970, Bird Machine Company, Inc. (Bird), a Massachusetts corporation engaged in the business of designing, manufacturing, and servicing centrifugal and filtration equipment, hired Mr. Naylor to establish and operate a parts depot in Charleston, Kanawha County. Initially, Mr. Naylor was the only employee of Bird's Charleston branch, but under his direction, it gradually evolved from a parts depot to a service and repair center, employing as many as fifty-seven persons. Mr. Naylor, who acquired the title of "Service Center Manager," had responsibility over all persons working at the Charleston center and reported directly to the home office in Massachusetts.

In late 1983, representatives from the home office met with Mr. Naylor and informed him that Bird was restructuring and expanding its business. Mr. Naylor, then fifty-three years old, was told that, as a result, he would be transferred to the position of "Contract Administrator" and that a new employee would be hired with the title of "General Manager." Mr. Naylor contends that he was assured his duties, pay, and benefits would not change.

In March, 1984, Mr. Naylor was introduced to the new General Manager of the Charleston service center, thirty-nine year old G. David Dillon. On April 2, 1984, Mr. Dillon began work at the Charleston facility. Mr. Naylor, in his new position as Contract Administrator, performed the same duties as in the past, but reported to Mr. Dillon instead of the home office. Mr. Naylor admitted that he considered Mr. Dillon his superior in the company hierarchy. On April 20, 1984, Mr. Naylor ceased work due to illness and spent the next several months in and out of the hospital.

In October, 1984, Mr. Naylor notified Bird that he was prepared to return to work. John Orphanos, manager of Bird's service division, advised Mr. Naylor to remain on sick leave until he could arrange a meeting. In late October, Mr. Orphanos and Joseph Lynch, Bird's vice-president of human resources, met with Mr. Naylor and informed him that Bird had decided to terminate his employment on December 31, 1984, due to restructuring and a change in management philosophy. After being advised that no other position was available within the company, Mr. Naylor requested a letter of recommendation and information relating to his ability to retire and to transfer his life and health insurance benefits to private use following the termination of his employment. Mr. Lynch agreed to check into Mr. Naylor's eligibility for retirement and insurance benefits, and Mr. Orphanos agreed to provide the letter of recommendation. Mr. Naylor did not return to work, but remained on Bird's payroll.

In December, 1984, Mr. Naylor telephoned Mr. Lynch to determine the status

1. W.Va.Code, 5–11–11 (1987), provides for a direct appeal to this Court from final orders of the West Virginia Human Rights Commission.

of his request for retirement and insurance benefits and the letter of recommendation. Mr. Lynch stated that he was still checking on his eligibility for benefits and informed Mr. Naylor that he would remain on the payroll through April, 1985.[2]

In April, 1985, Mr. Naylor again phoned Mr. Lynch about his retirement and insurance benefits. At that time, Mr. Lynch advised Mr. Naylor that he was ineligible for retirement benefits, that he would be removed from the payroll on June 30, 1985, and that his health and life insurance would terminate thirty days thereafter. A letter to this effect, dated June 12, 1985, was subsequently mailed to Mr. Naylor. He also received a letter of recommendation from Mr. Orphanos dated April 18, 1985. On June 30, 1985, Mr. Naylor was removed from Bird's payroll.

On July 19, 1985, Mr. Naylor filed a complaint with the West Virginia Human Rights Commission alleging that he had been discriminated against on the basis of his age. Bird subsequently filed a motion to dismiss the complaint on the ground that Mr. Naylor had failed to file it within ninety days after the last alleged act of discrimination. Depositions were taken of Mr. Naylor and Mr. Orphanos and a hearing was conducted, at which time the hearing examiner ruled that there was insufficient evidence in the record to show that the complaint was not timely filed. The case proceeded to a full evidentiary hearing on September 17, 1986, where Bird again raised the issue of timeliness.[3]

In his recommended findings and conclusions, the hearing examiner found that Mr.

Naylor had known of his replacement by a younger man in April, 1984, and of his discharge from employment in October, 1984. The hearing examiner found no evidence of any good faith belief by Mr. Naylor that he was employed after October, 1984, and concluded that the payment of his salary through June 30, 1985, was for humanitarian reasons unrelated to active employment. Accordingly, the hearing examiner proposed that the complaint be dismissed with prejudice as not timely filed.[4]

By order dated April 27, 1987, the Commission adopted the hearing examiner's findings and conclusions and dismissed the case with prejudice due to an untimely filing of the complaint. Mr. Naylor subsequently filed a motion for reconsideration which was denied by order dated July 10, 1987. It is from this order that Mr. Naylor now appeals.

■ The principal issue in this appeal is whether the Commission erred in dismissing the complaint as not timely filed. At the time of the events giving rise to this litigation, W.Va.Code, 5–11–10 (1971), provided that any complaint before the Commission "must be filed within ninety days after the alleged act of discrimination."[5] In note 10 of *Independent Fire Co. No. 1 v. West Virginia Human Rights Comm'n,* 180 W.Va. 406, 410, 376 S.E.2d 612, 616 (1988), we quoted from *Chardon v. Fernandez,* 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6, 9 (1988), in recognizing that " 'the proper focus is on the time of the *discriminatory act,* not the point at which the *consequences* of the act become pain-

---

**2.** Mr. Lynch and Mr. Orphanos testified that Mr. Naylor was allowed to remain on the payroll past October, 1984, because his health had so seriously deteriorated, the company was afraid he might die. Whether Mr. Naylor was advised of these humanitarian reasons for the extension is in dispute.

**3.** Mr. Naylor contends that the hearing examiner erred in allowing this issue to be "relitigated" at the evidentiary hearing in view of his prior decision to deny Bird's motion to dismiss on the ground of untimely filing. An examination of the record shows that the hearing examiner previously found only that the evidence in the depositions of Mr. Naylor and Mr. Orphanos

was insufficient to warrant dismissal of the complaint. Accordingly, the issue was properly set for full hearing.

**4.** The hearing examiner also found insufficient evidence to support the discrimination claim. The Commission did not adopt this portion of the hearing examiner's order or make any rulings on the merits of the claim. Accordingly, any issues relating to the merits are not properly before this Court.

**5.** This statute was subsequently amended and now provides for a one hundred and eighty day limitations period. *See* 1987 W.Va. Acts ch. 64.

ful.' (Emphasis in original)." *See also Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). Accordingly, we held in Syllabus Point 2:

> "In cases alleging a discriminatory discharge from employment under W.Va. Code, 5–11–10, the time period for filing a complaint with the Human Rights Commission ordinarily begins to run on the date when the employer unequivocally notifies the employee of the termination decision."

■ Here, the discriminatory act alleged by Mr. Naylor was the termination of his employment. Mr. Naylor admits that he was made aware of Bird's decision to discharge him at the October, 1984 meeting with Mr. Lynch and Mr. Orphanos. He subsequently told family and friends that he had been fired and asserted below that he had suffered emotional distress in the ensuing months as a result. There is no evidence that Bird made any later offers of reemployment which would negate the unequivocal nature of the October, 1984 notification. Nor does the fact that Mr. Naylor remained on Bird's payroll for several months afterwards affect the date on which the limitations period began to run. As the United States Supreme Court stated in *Delaware State College v. Ricks:* "Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." 449 U.S. at 257, 101 S.Ct. at 504, 66 L.Ed.2d at 439.

In these circumstances, we must conclude that Mr. Naylor had unequivocal notice of his dismissal in October, 1984, and that the limitations period began to run at that time. Accordingly, we conclude that the complaint, filed some nine months later, was not timely.

■ We have also recognized, however, that the limitations period contained in W.Va.Code, 5–11–10, is subject to equitable modification. In Syllabus Point 1 of *Independent Fire Co. No. 1, supra,* we stated:

> "Under W.Va.Code, 5–11–10, the time period for filing a complaint with the Human Rights Commission alleging a violation of the Human Rights Act is not

jurisdictional in nature and is subject to waiver and equitable doctrines of tolling and estoppel."

*See also Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). In the body of the opinion, 180 W.Va. at 408–409, 376 S.E.2d at 614–15, we quoted the following explanation of these concepts from *Mull v. ARCO Durethene Plastics, Inc.,* 784 F.2d 284, 291–92 (7th Cir.1986):

> " 'Indeed, two general types of equitable modification are generally recognized: "(1) equitable tolling, which often focuses on the plaintiff's excusable ignorance of the limitations period and on lack of prejudice to the defendant and (2) equitable estoppel, which usually focuses on the actions of the defendant." *Naton v. Bank of California,* 649 F.2d 691, 696 (9th Cir.1981) (citations omitted).

> \*    \*    \*    \*    \*    \*

> " 'Dealing first with equitable tolling, it is well-established that the limitations period is tolled until " 'facts that would support a charge of discrimination … [are] apparent or should [be] apparent to a person with a reasonably prudent regard to his rights similarly situated to the plaintiff.' " *Vaught [v. R.R. Donnelley & Sons Co.,* 745 F.2d 407] at 410–11 [(7th Cir.1984)] (quoting *Reeb v. Economic Opportunity Atlanta, Inc.,* 516 F.2d 924, 931 (5th Cir.1975).'

> \*    \*    \*    \*    \*    \*

> " 'Equitable estoppel is available only if the employee's otherwise untimely filing was the result "either of a deliberate design by the employer or of actions that the employer should unmistakably have understood would cause the employee to delay filing his charge." *Price v. Litton Business Systems, Inc.,* 694 F.2d 963, 965 (4th Cir.1982). Among other factors, the granting of equitable estoppel should be premised upon (1) "a showing of the plaintiff's actual and reasonable reliance on the defendant's conduct or representations" and (2) "evidence of improper purpose on the part of the defendant or of the defendant's actual or constructive knowledge of the deceptive nature of its

conduct." *Naton,* 649 F.2d at 696.' " (Footnote omitted).

■ We do not believe the facts of this case warrant application of these principles. It appears that in October, 1984, Mr. Naylor had sufficient knowledge of the facts to warrant the filing of an age discrimination complaint with the Human Rights Commission. There is no evidence that Bird subsequently engaged in any deceptive acts which lulled Mr. Naylor into not making such a charge. Bird did extend the termination date on two occasions, thereby allowing Mr. Naylor to remain on the payroll until June 30, 1985.

There is no evidence, however, that Bird offered Mr. Naylor continued employment or led him to believe by its actions that its earlier decision to fire him had been or would be rescinded. Indeed, the evidence indicates that Mr. Naylor had no expectation of ever returning to work and believed the purpose of the extensions was to allow him to qualify for early retirement benefits. In such circumstances, we cannot say that Mr. Naylor was entitled to equitable modification of the time constraints in the Human Rights Act. *See Kriegesmann v. Barry–Wehmiller Co.,* 739 F.2d 357 (8th Cir.), *cert. denied,* 469 U.S. 1036, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984); *Mogley v. Chicago Title Ins. Co.,* 719 F.2d 289 (8th Cir. 1983); *Price v. Litton Business Sys., Inc.,* 694 F.2d 963 (4th Cir.1982); *Cole v. CBS, Inc.,* 634 F.Supp. 1558 (S.D.N.Y.1986). Accordingly, we find no grounds for reversing the decision of the Human Rights Commission.

For the reasons set forth above, the final decision of the West Virginia Human Rights Commission, dated July 10, 1987, is affirmed.

Affirmed.

McGRAW, J., participated in this decision, but departed from the Court prior to the preparation of the opinion.

WORKMAN, J., did not participate in the consideration or decision of this case.