**FILED**

**May 18, 2026**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

**Christina Gaddy,
Petitioner,**

**v.)** **No. 23-658** (ICA No.: 22-ICA-110)
(Kanawha County Circuit Court No. 21-AA-63)

**WorkForce West Virginia,
Respondent.**

### MEMORANDUM DECISION

Petitioner Christina Gaddy appeals the September 5, 2023, memorandum decision of the Intermediate Court of Appeals ("ICA").[1]  Ms. Gaddy applied for unemployment benefits after resigning from her job.  She claimed that her resignation was due to a medical condition.  West Virginia Code § 21A-6-3(1) requires an unemployment benefits claimant who resigns due to a medical condition to submit a physician's certification within thirty days of leaving employment.  According to Ms. Gaddy, Respondent WorkForce West Virginia ("WorkForce")[2] informed her of this requirement forty-four days after she resigned and she submitted her physician's certification one day after being informed of the requirement.  However, the Administrative Law Judge ("ALJ") ruled that Ms. Gaddy was disqualified from receiving unemployment benefits because she did not submit her physician's certification within thirty days of her resignation.  The West Virginia WorkForce Board of Review ("BOR") affirmed the ALJ's decision.  Ms. Gaddy appealed the BOR's order to the Circuit Court of Kanawha County.  The circuit court found that Ms. Gaddy diligently pursued her claim and that WorkForce was not prejudiced by the late submission of the physician's certification.  Therefore, the circuit court applied equitable tolling to the thirty-day deadline and concluded that Ms. Gaddy was not disqualified from receiving unemployment benefits due to her late submission of the physician's certification.  The ICA reversed the circuit court's order, ruling that Ms. Gaddy was not eligible to receive unemployment benefits due to her failure to comply with the thirty-day deadline.  Ms. Gaddy now appeals the ICA's decision.

---

[1] *See Workforce W. Va. v. Gaddy*, No. 22-ICA-110, 2023 WL 5695931 (W. Va. Ct. App. Sept. 5, 2023) (memorandum decision).

[2] WorkForce, which includes the Division of Unemployment Compensation, is part of the West Virginia Department of Commerce.  *See* W. Va. Code § 5F-2-1.

1

After review, we find that the ICA erred by reversing the circuit court's order. Based on the specific facts of this case, we conclude that the circuit court correctly determined that equitable tolling applied and that Ms. Gaddy should not have been disqualified from receiving unemployment benefits due to her late submission of the physician's certification because (1) she diligently pursued her claim which was difficult to navigate due to the extraordinary circumstances presented by the Covid-19 pandemic; and (2) WorkForce was not prejudiced by her late submission—it had the physician's certification before the administrative hearing. Therefore, we reverse the ICA's decision and remand this matter to the BOR with directions for entry of an order consistent with our ruling herein.[3]

Ms. Gaddy began working for American Public University ("employer") in 2013. She was a senior financial aid advisor who primarily provided student loan information to parents and students over the telephone. In March of 2020, Ms. Gaddy began working remotely due to the Covid-19 pandemic. According to Ms. Gaddy, this transition increased her workload and stress, which significantly heightened her preexisting anxiety. She received treatment for anxiety throughout 2020. Ms. Gaddy utilized both the Family and Medical Leave Act ("FMLA") and her accrued sick leave to deal with her anxiety and to care for her three children, who were home from school and daycare due to the Covid-19 pandemic. On February 10, 2021, Dr. Rauf Cheema, a psychiatrist who treated Ms. Gaddy, completed an FMLA form stating that Ms. Gaddy was "unable to work at times due to anxiety." Dr. Cheema noted that Ms. Gaddy had intermittent absences from work, up to three times a week, between February 9, 2020, through February 9, 2021, due to anxiety.

In February 2021, Ms. Gaddy and her children contracted Covid-19. Because she had Covid-19 and could not work, Ms. Gaddy was granted unemployment benefits for the week of February 26, 2021, continuing until she and her children were no longer Covid-19 positive. Ms. Gaddy was scheduled to return to work on March 22, 2021, but resigned from her position that day. Shortly after leaving her position, Ms. Gaddy applied for unemployment benefits. WorkForce placed a hold on her claim and referred it to a WorkForce deputy to conduct an investigation.[4] According to Ms. Gaddy, after the hold was placed on her claim, she spent considerable time and effort attempting to contact WorkForce but faced numerous obstacles including that the local WorkForce office was closed to the public due to the Covid-19 pandemic. Further, Ms. Gaddy stated that "it was

_____

[3] We find that a memorandum decision reversing the ICA is appropriate. *See* W. Va. R. App. P. 21. Ms. Gaddy is represented by Matthew Jividen, Esq. WorkForce is represented by Kimberly A. Levy, Esq.

[4] *See* W. Va. Code § 21A-2-13 ("For the original determination of claims under this chapter, the commissioner shall appoint a necessary number of deputies as his or her representatives."); W. Va. Code § 21A-7-4(a) ("A deputy shall promptly investigate all claims.").

exceedingly difficult to get a live person" on WorkForce's statewide telephone hotline. Ms. Gaddy asserted that she spent "more than a dozen hours calling or on hold while attempting to reach WorkForce between late March and early May."

On April 30, 2021, WorkForce issued its deputy's decision concluding that Ms. Gaddy was disqualified from receiving unemployment benefits because she "failed to provide . . . proof that the separation [from employment] involved fault on the part of her employer."[5] Ms. Gaddy stated that she was not informed of this ruling until May 5, 2021, when she spoke to a WorkForce employee on the telephone. According to Ms. Gaddy, the employee told her that she was required to submit a physician's note to WorkForce if her resignation was due to a medical condition. One day after being informed of this requirement, Ms. Gaddy submitted a letter from Dr. Cheema, dated May 6, 2021, which provided, "Ms. Christina Gaddy was under my care for her illness. She was stressed at work which contributed to her anxiety and panic attacks. Due to her severe anxiety, she left her position." Ms. Gaddy states that she sent this physician's certification to WorkForce on May 6, 2021, along with an email informing WorkForce that she was appealing the deputy's decision.

The appeal of the deputy's decision resulted in a hearing before an ALJ that was conducted by telephone on June 25, 2021. Ms. Gaddy testified that she quit her job due to her "anxiety and panic disorder that really just developed over the course of, I would say, just after Covid hit." She stated that her employer tried to make accommodations for her anxiety and that she took a thirty-day unpaid leave of absence and utilized FMLA leave. However, she testified that her anxiety "became so severe that I was just not able to continue . . . with my job responsibilities." While Ms. Gaddy acknowledged that she had childcare issues due to her children being home during the Covid-19 pandemic, she stated that the main reason she resigned was because of her anxiety. Additionally, Ms. Gaddy testified that she (1) was not aware of the thirty-day requirement to submit her physician's certification until May 5, 2021; (2) submitted the physician's certification one day after being informed of this requirement; and (3) would have submitted her physician's certification within thirty days if she had been aware of the requirement.

In response to Ms. Gaddy's testimony that she quit her job due to anxiety, the ALJ stated, "I'm happy to accept this [as] true, the fact that you left your job for medical reasons. I don't doubt that in any way, shape, or form. I believe you completely. . . . It's just I have to follow the rules to try to get your benefits." Similarly, the ALJ noted that Dr. Cheema's May 6, 2021, letter was in the record, but then stated:

---

[5] The WorkForce deputy analyzed Ms. Gaddy's claim to see if good cause and fault by her employer existed. The deputy did not analyze her case under the medical resignation provision of West Virginia Code § 21A-6-3(1).

See, I'm working under a statute that says that that sort of medical information has to be provided to the employer within 30 days. . . . And see it . . . the statute itself said that it must be within 30 days. I don't know if I have any way of gettin' [sic] around that. Well, in fact, I don't think I do.

On June 30, 2021, the ALJ entered an order affirming the deputy's decision. The ALJ's order explained that Ms. Gaddy

was unable to work due to a combination of her own health and the lack of childcare for her children. She provided medical certification that her job worsened her health condition. Unfortunately, it was provided more than 30 days after her resignation. This [ALJ] has no discretion to avoid a statutory requirement that says such certification must be provided to the employer within 30 days of leaving the job. "Must" is a legislative mandate for the [ALJ]. . . . Therefore, the claimant is disqualified from [receiving] benefits.

Ms. Gaddy appealed the ALJ's ruling to the BOR. In this appeal, she included a detailed description of the efforts she made to contact WorkForce as her claim was pending and explained that despite her repeated attempts to obtain information from WorkForce, she was not informed of the thirty-day requirement to submit a physician's certification until May 5, 2021. The BOR affirmed the ALJ's decision, adopting the ALJ's findings by reference.

Thereafter, Ms. Gaddy appealed the BOR's order to the Circuit Court of Kanawha County.[6] She argued that the circuit court should apply the doctrine of equitable tolling to the thirty-day deadline to submit a physician's certification. WorkForce did not appear or file a brief with the circuit court.[7] The circuit court agreed with Ms. Gaddy and concluded that equitable tolling applied to the thirty-day deadline to submit a physician's certification under the facts of this case. The circuit court set forth the following detailed findings

[6] Under our current law, at the conclusion of administrative proceedings concerning unemployment benefits, a claimant or any other interested party may appeal to the ICA. *See* W. Va. Code § 21A-7-17 ("The decision of the board shall be final and benefits shall be paid or denied in accordance therewith, unless a claimant, last employer, or other interested party appeals to the Intermediate Court of Appeals within 30 days after mailing of notification of the board's decision[.]"). However, the legislation creating the ICA was not in effect when Ms. Gaddy's administrative proceeding concluded. Therefore, she appealed the BOR's order to circuit court.

[7] During oral argument, counsel for WorkForce was asked why WorkForce did not appear before the circuit court. Counsel stated that (1) WorkForce was not filing briefs or appearing before the circuit court during that timeframe in contested cases; and (2) she did not know why WorkForce adopted this approach.

4

explaining this ruling: (1) "COVID has challenged all areas of life, and the facts of [Ms. Gaddy's] case are not ordinary. [Ms. Gaddy] made every effort that can be expected of a claimant under the circumstances of the COVID pandemic"; (2) Ms. Gaddy was self-represented during the administrative proceedings; (3) WorkForce did not timely inform Ms. Gaddy about the thirty-day deadline; (4) Ms. Gaddy repeatedly called WorkForce's statewide hotline over a period of weeks to get information about her claim but WorkForce was unreachable during this timeframe; (5) after finally reaching a WorkForce representative who informed Ms. Gaddy of the requirement to produce a physician's note, Ms. Gaddy provided the physician's note the next day; (6) WorkForce was not prejudiced by Ms. Gaddy's late production of the physician's note—it was produced "at a point in the process that allowed ample time for all parties to review and, if necessary, contest any facts surrounding [Ms. Gaddy's] medical quit prior to the [ALJ] hearing."

Additionally, the circuit court's order provides that "[s]ince the [ALJ] acknowledged a valid medical quit, there are no other issues precluding [Ms. Gaddy] from receiving unemployment compensation benefits." Therefore, the circuit court (1) reversed the BOR's decision; (2) concluded that Ms. Gaddy is eligible to receive unemployment benefits; and (3) ordered WorkForce to calculate the appropriate amount of benefits "to which [Ms. Gaddy] is entitled and [to] promptly distribute those sums to [Ms. Gaddy]."

After entry of the circuit court's order, WorkForce appealed to the ICA. WorkForce asserted, among other arguments, that the circuit court erred by applying equitable tolling to permit Ms. Gaddy to receive unemployment benefits despite her late submission of the physician's certification. The ICA agreed with WorkForce and reversed the circuit court's order. The ICA determined that

> Ms. Gaddy did not provide a physician's certification within thirty days as required by West Virginia Code § 21A-6-3(1). . . . It also appears from the record that, as submitted, the certification did not specifically address whether Ms. Gaddy's position aggravated or worsened her anxiety as required by West Virginia Code § 21A-6-3(1). . . . In the present case, equitable tolling was not an appropriate remedy, as the statute clearly sets forth the time frame in which a physician's certification must be submitted for a valid medical quit. . . . Further, the circuit court was required by law to give deference to the findings of fact of the Board and the ALJ.

*Gaddy*, 2023 WL 5695931, at *4.

After entry of the ICA's decision, Ms. Gaddy filed the instant appeal.

On appeal, Ms. Gaddy contests the ICA's conclusion that she was not eligible to receive unemployment benefits based on her failure to comply with the thirty-day deadline contained in West Virginia Code § 21A-6-3(1). When the issue on appeal involves the

interpretation or application of a statute, we apply a de novo standard of review. *See* Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."). Our review also entails consideration of the findings of fact made by the ALJ, which were adopted by the BOR. This review is conducted under our plainly wrong standard. *See* Syl. Pt. 1, in part, *Kisamore v. Rutledge*, 166 W. Va. 675, 276 S.E.2d 821 (1981) ("Findings of fact by the [Board of Review of Workforce West Virginia], in an unemployment compensation case, should not be set aside unless such findings are plainly wrong[.]"). With these standards in mind, we turn to the parties' arguments.

The main issue in this appeal is whether the ICA erred by reversing the circuit court's ruling that equitable tolling applied to the thirty-day deadline to submit a physician's certification. As explained below, we agree with Ms. Gaddy that the circuit court's application of equitable tolling under the specific facts of this case was appropriate and that the ICA erred by reversing the circuit court's order. We begin our analysis by examining West Virginia Code § 21A-6-3(1), the statute that requires a claimant to submit a physician's certification within thirty days of leaving employment. We then review our equitable tolling jurisprudence and explain our conclusion that the circuit court correctly applied the doctrine in this case and the ICA erred by reversing the circuit court.

West Virginia Code § 21A-6-3(1) provides that an individual is not disqualified from receiving unemployment benefits if he or she leaves their job for health-related reasons. It states:

> Upon the determination of the facts by the commissioner, an individual is disqualified for benefits:
>
> (1) For the week in which he or she left his or her most recent work voluntarily without good cause involving fault on the part of the employer and until the individual returns to covered employment and has been employed in covered employment at least 30 working days.
>
> For the purpose of this subdivision, an individual has not left his or her most recent work voluntarily without good cause involving fault on the part of the employer if the individual leaves his or her most recent work with an employer and if he or she in fact, within a 14-day calendar period, does return to employment with the last preceding employer with whom he or she was previously employed within the past year prior to his or her return to work, and which last preceding employer, after having previously employed the individual for 30 working days or more, laid off the individual because of lack of work, which layoff occasioned the payment of benefits under this chapter or could have occasioned the payment of benefits under this chapter

6

had the individual applied for benefits. It is the intent of this paragraph to cause no disqualification for benefits for an individual who complies with the foregoing set of requirements and conditions. Further, for the purpose of this subdivision, **an individual has not left his or her most recent work voluntarily without good cause involving fault on the part of the employer, if the individual was compelled to leave his or her work for his or her own health-related reasons and notifies the employer prior to leaving the job or within two business days after leaving the job or as soon as practicable and presents written certification from a licensed physician within 30 days of leaving the job that his or her work aggravated, worsened, or will worsen the individual's health problem.**

*Id.* (Emphasis added).[8]

Ms. Gaddy testified that her resignation was mainly due to her severe anxiety. The ALJ found this testimony to be credible and made the factual finding that Ms. Gaddy left her employment due to a combination of anxiety and lack of childcare. However, the ALJ determined that he had no discretion to find that Ms. Gaddy was eligible to receive unemployment benefits because she failed to submit her physician's certification within thirty days of resigning. The circuit court agreed with the ALJ's factual finding that Ms. Gaddy left her employment due to her severe anxiety. The circuit court then analyzed our caselaw addressing equitable tolling, noted the unusual factual circumstances of this case, and determined that under these unique facts, equitable tolling applied. We agree with the circuit court's analysis.

This Court has recognized that equitable tolling is available in limited circumstances.[9] When equitable tolling is raised, we generally focus on two issues: the plaintiff's excusable ignorance of the statute of limitations and whether the defendant suffered prejudice. In *Independent Fire Company No. 1 v. West Virginia Human Rights Commission*, 180 W. Va. 406, 376 S.E.2d 612 (1988) ("*Independent Fire Company*"), the Court noted that "two types of equitable modification [regarding the statute of limitations]

---

[8] In considering the meaning of statutory provisions, we note that "[t]he primary rule of statutory construction is to ascertain and give effect to the intention of the Legislature." Syl. Pt. 8, *Vest v. Cobb*, 138 W. Va. 660, 76 S.E.2d 885 (1953). Further, "[w]hen a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. Pt. 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959).

[9] *See Adkins v. Clark*, 247 W. Va. 128, 134, 875 S.E.2d 266, 272 (2022) (noting that equitable tolling is available under limited circumstances and that "we have differentiated equitable tolling from equitable estoppel[.]").

are generally recognized: (1) equitable tolling, which often focuses on the plaintiff's excusable ignorance of the limitations period and on lack of prejudice to the defendant and (2) equitable estoppel, which usually focuses on the actions of the defendant." *Id.* at 408, 376 S.E.2d at 614 (internal quotation and citation omitted). *See also Bradley v. Williams*, 195 W. Va. 180, 184, 465 S.E.2d 180, 184 (1995). Similarly, the United States Supreme Court has recognized that "a court usually may pause the running of a limitations statute . . . when a party has pursued his rights diligently but some extraordinary circumstance prevents him from meeting a deadline." *U.S. v. Wong*, 575 U.S. 402, 407-08 (2015) (internal citation and quotation omitted)*. See Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014) (providing that equitable tolling "pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action."); *Williams v. Bd. of Rev.*, 948 N.E.2d 561, 572 (Ill. 2011) (recognizing that "ignorance of a statutory deadline based on lack of notice or inadequate notice may provide a proper basis for equitable tolling."); *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990) (providing that equitable tolling "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim.").

In the instant case, Ms. Gaddy diligently pursued her unemployment claim but faced extraordinary obstacles due to the circumstances surrounding the Covid-19 pandemic. Because of the pandemic, WorkForce's offices were closed to the general public and Ms. Gaddy's only avenue to contact a WorkForce representative was through a telephone hotline. Ms. Gaddy stated that she spent hours on hold and experienced numerous difficulties trying to obtain information about her claim through WorkForce's hotline. When she was finally told that her claim had been denied by a deputy's decision and that she was required to submit a physician's certification regarding her medical condition, Ms. Gaddy obtained the note from Dr. Cheema and submitted it the following day. We find that under these circumstances, the first part of the equitable tolling test has been satisfied because the extraordinary circumstances created by the Covid-19 pandemic prevented Ms. Gaddy from being informed of the physician's certification requirement in a timely fashion.[10]

---

[10] Courts in other contexts have found that the extraordinary obstacles created by the Covid-19 pandemic were sufficient to satisfy the first prong of the equitable tolling test. *See* Meghan L. Downey, *Extraordinary Circumstances and Extraordinary Writs: Equitable Tolling During the Covid-19 Pandemic and Beyond*, 27 Berkeley J. Crim. L. 31, 53-54 (2022) ("Since March 2020, habeas petitioners have argued that circumstances created by the COVID-19 pandemic are extraordinary enough to justify equitable tolling. On the merits of the extraordinary circumstances inquiry, many courts have been persuaded by petitioners' arguments[.]"). One court noted that the Covid-19 pandemic does not automatically warrant equitable tolling relief; rather, "Courts have concluded that the COVID-19 pandemic could—in certain circumstances—conceivably warrant equitable tolling[.] . . . These 'certain circumstances' involve defendants who had been pursuing

The second factor of the equitable tolling analysis is whether the defendant suffered prejudice. The circuit court found that neither Ms. Gaddy's employer, nor WorkForce, were prejudiced "in any significant manner" by the late production of the physician's note because it was produced shortly after the thirty-day deadline and seven weeks prior to the ALJ hearing. We agree with the circuit court's analysis. WorkForce has not demonstrated that it was prejudiced as a result of the physician's note being produced approximately two weeks after the thirty-day deadline had expired. It had the note well before the ALJ hearing. Therefore, we find that Ms. Gaddy satisfied the second part of the equitable tolling test.

While the circuit court reviewed our caselaw on equitable tolling and applied this caselaw to the specific facts of Ms. Gaddy's case, the ICA's decision reversing the circuit court did not address either prong of our equitable tolling analysis. Instead, the ICA's decision simply provides that "equitable tolling was not an appropriate remedy, as the statute clearly sets forth the time frame in which a physician's certification must be submitted for a valid medical quit." *Gaddy*, 2023 WL 5695931, at *4. In essence, the ICA found that because West Virginia Code § 21A-6-3(1) contains a thirty-day timeframe to submit a physician's certificate, the only relevant inquiry is whether a claimant complied with this deadline. We disagree.

One legal treatise addressing equitable tolling noted that "[s]tatutes of limitations, which encourage plaintiffs to pursue claims diligently, are customarily subject to equitable tolling, unless tolling would be inconsistent with the text of the relevant statute." Paul M. Coltoff, *Equitable tolling of statute of limitations, generally*, 51 Am. Jur. 2d Limitation of Actions § 155 (2026). Similarly, the Washington Supreme Court observed that "[e]quitable tolling of a statute of limitation is appropriate when consistent with the policies underlying the statute and the purposes underlying the statute of limitation." *In re Bonds*, 196 P.3d at 675-76. In the instant case, West Virginia Code § 21A-6-3(1) does not include any language indicating that equitable tolling would be inconsistent with the plain text of the statute. Instead, the statutory language provides a straightforward statute of limitation that encourages an unemployment benefits claimant to diligently pursue his or her claim by submitting the physician's certificate within thirty days.

---

their rights diligently and would have timely filed if not for external obstacles caused by COVID-19." *Taylor v. U.S.*, 2021 WL 1164813, at *3 (E.D. Mo. Mar. 26, 2021) (internal citation and quotation omitted). We emphasize that, in general, equitable tolling "should be used sparingly and does not extend broadly to allow claims to be raised except under narrow circumstances." *In re Bonds*, 196 P.3d 672, 676 (Wash. 2008). However, the extraordinary circumstances surrounding Ms. Gaddy's claim, including the obstacles created by the Covid-19 pandemic, make this the rare case in which the application of equitable tolling is appropriate.

Further, we note that this Court has analyzed equitable tolling in a similar context and determined that its application was appropriate. In *Independent Fire Company*, the Court addressed "whether the statutory time period for filing a complaint with the [West Virginia Human Rights Commission] is jurisdictional in nature, or rather is akin to a statute of limitations which can be waived or modified by traditional equitable doctrines[.]" 180 W. Va. at 407, 376 S.E.2d at 613. The Court determined that the time period for filing a complaint alleging a violation of the Human Rights Act is not jurisdictional in nature and is subject to waiver and equitable doctrines of tolling and estoppel, explaining that

> this Court has consistently interpreted the West Virginia Human Rights Act broadly . . . in accordance with the legislative directive that "[t]he provisions of this article shall be liberally construed to accomplish its objectives and purposes." W.Va.Code, 5-11-15 (1967). It would seem especially inappropriate to treat the filing requirement as jurisdictional in nature given the fundamental character of the interests protected by the Act.

*Id.* at 410, 376 S.E.2d at 616 (internal citation and quotation omitted).

While the Court in *Independent Fire Company* was addressing a claim brought under the Human Rights Act, we find that its rationale is applicable to an unemployment benefits claim. That is because this Court has recognized that "[u]nemployment compensation statutes, being remedial in nature, should be liberally construed to achieve the benign purposes intended to the full extent thereof." Syl. Pt. 6, *Davis v. Hix,* 140 W. Va. 398, 84 S.E.2d 404 (1954). *See* Syl. Pt. 1, *Mercer Cnty. Bd. of Ed. v. Gatson*, 186 W. Va. 251, 412 S.E.2d 249 (1991). Further, we have recognized that "unemployment compensation statutes should be liberally construed in favor of the claimant[.]" *Davenport v. Gatson*, 192 W. Va. 117, 119, 451 S.E.2d 57, 59 (1994). We have also held that "[d]isqualifying provisions of the Unemployment Compensation Law are to be narrowly construed." Syl. Pt. 1, *Peery v. Rutledge*, 177 W. Va. 548, 355 S.E.2d 41 (1987).

Based on the foregoing, we find that West Virginia Code § 21A-6-3(1)'s requirement that a claimant submit a physician's certification within thirty days is not jurisdictional in nature. Therefore, consistent with our holding in *Independent Fire Company*, we find that the ICA erred by summarily concluding that equitable tolling was not an appropriate remedy in this case. Instead, we agree with the circuit court's analysis that under the specific facts of this case, the application of equitable tolling to the thirty-day deadline to submit a physician's certification was appropriate.

Finally, having found that the circuit court correctly applied equitable tolling, the last issue we address is whether the physician's certification Ms. Gaddy submitted included the information required by the statute. West Virginia Code § 21A-6-3(1) requires a claimant to submit a physician's certification providing "that his or her work aggravated,

worsened, or will worsen the individual's health problem." *Id.* The ICA's decision includes one sentence addressing this requirement, "It also appears from the record that, as submitted, the certification did not specifically address whether Ms. Gaddy's position aggravated or worsened her anxiety as required by West Virginia Code § 21A-6-3(1)." *Gaddy*, 2023 WL 5695931, at *4. Significantly, the ICA's analysis fails to note that the ALJ made a factual finding on this issue. The ALJ's decision provides, "[Ms. Gaddy] provided medical certification that her job *worsened her health condition*." (Emphasis added). This finding of fact from the ALJ is entitled to considerable deference and should have been considered by the ICA under the "plainly wrong" standard. *See* Syl. Pt. 1, in part, *Kisamore v. Rutledge*, 166 W. Va. 675, 276 S.E.2d 821.[11]

Our review of the evidence confirms that the ALJ's factual finding on this issue was not plainly wrong. Dr. Cheema submitted an FMLA form in February of 2021, noting that Ms. Gaddy's anxiety caused her to miss work on an intermittent basis over the preceding twelve months. In Dr. Cheema's letter from May of 2021, he found that Ms. Gaddy's severe anxiety caused her to leave her job entirely. Thus, Dr. Cheema's certification in May of 2021 made it clear that by the time Ms. Gaddy resigned, her anxiety had worsened to such a degree that she was no longer able to work. Therefore, we do not find that the ALJ's factual finding on this issue was clearly wrong and we disagree with the ICA's conclusion that the physician's certification Ms. Gaddy submitted was insufficient under West Virginia Code § 21A-6-3(1).

---

[11] Moreover, while the ICA failed to note that the ALJ made a factual finding on this issue, the ICA was critical of the circuit court for failing to give deference to the ALJ's factual findings. The ICA's decision included one sentence, that did not contain additional analysis, providing that "the circuit court was required by law to give deference to the findings of fact of the Board and the ALJ." *Gaddy*, 2023 WL 5695931, at *4. To the extent the ICA is suggesting that the circuit court's application of equitable tolling is inconsistent with the findings of fact made by the ALJ, we disagree. The ALJ made the factual finding that Ms. Gaddy resigned due to her severe anxiety and that her testimony was credible. This testimony included statements about the difficulties of navigating her claim during the pandemic. These factual findings support the circuit court's application of equitable tolling. Thus, it is clear that the circuit court did not disregard the ALJ's findings of fact; it relied on them. Further, the ALJ did not consider whether an equitable doctrine could apply to the thirty-day deadline to submit a physician's certificate. The ALJ stated: "This [ALJ] has no discretion to avoid a statutory requirement that says such certification must be provided to the employer within 30 days of leaving the job." Even if the ALJ had made a finding on whether equitable relief applied, that issue involves a question of law and the circuit court would not have been required to afford deference to that decision because its standard of review for a legal question arising from the ALJ is de novo. Therefore, we disagree with the ICA's suggestion that the circuit court failed to give deference to the findings of fact made by the ALJ and adopted by the BOR.

Based on all of the foregoing, we reverse the ICA's September 5, 2023, memorandum decision.[12] Further, we conclude that the circuit court correctly determined that under the specific facts of this case, equitable tolling applied and that Ms. Gaddy should not have been disqualified from receiving unemployment benefits due to her late submission of the physician's certificate. Therefore, we remand this matter to the BOR with directions for entry of an order consistent with our ruling herein.[13]

Reversed and Remanded with Directions.

**ISSUED**: May 18, 2026

**CONCURRED IN BY**:

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III

---

[12] Ms. Gaddy also argued that the ICA applied the wrong standard of review and that its decision should be reversed and vacated on that basis. According to Ms. Gaddy, WorkForce was a party to the appeal before the circuit court, but it did not appear, participate, or raise any of the arguments or issues there that it raised before the ICA. Accordingly, Ms. Gaddy asserts that the ICA should have evaluated WorkForce's assignments of error under a plain error standard. Because we have found that the ICA erred by reversing the circuit court's order, we decline to address this additional assignment of error.

[13] We agree with the circuit court's conclusion that because equitable tolling applies, Ms. Gaddy "is hereby eligible for receipt of unemployment compensation benefits"; and that on remand, the BOR must calculate the appropriate amount of benefits "to which [Ms. Gaddy] is entitled and [to] promptly distribute those sums to [Ms. Gaddy]."